THE HOLMES AND GRIGGS MANUFACTURING COMPANY, Respondent, *v.* THE HOLMES AND WESSELL METAL COMPANY et al., Appellants.

While a corporation may not purchase or deal in the stock of other corporations, unless expressly authorized by law so to do, it may take title to such stock in payment of a debt owing to it.

The provision of the General Manufacturing Act (§ 8, chap. 40, Laws of 1848), declaring that it shall not be lawful for a corporation organized under it to use any of its funds in the purchase of stock of another corporation, does not limit its power to take such stock in payment of a debt.

A corporation organized under said act has power, with the consent of all of its stockholders, to sell its plant to another corporation and to retire from business, taking payment in the stock of the other corporation.

The fact that stock so taken was issued to and is held by an officer of the vendor as trustee for it, does not render the transaction *ultra vires.*

*It seems* that if such a transfer is *ultra vires* after it has been completed and the title to the stock taken in payment vested in the vendor, it has power to sell and dispose of the same, and a purchaser from it may not, in an action to recover the purchase-price, avail himself of the plea of *ultra vires.*

Reported below, 53 Hun, 52.

(Argued April 28, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 24, 1889, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Adam C. Ellis* for appellants. The plaintiff, a domestic manufacturing corporation, could not acquire any ownership in or title to the stock, either by original subscription in its own name or in the name of its officers, assuming to act as its trustees. (Morawetz on Corp. [2d ed.] 284, §§ 317, 318; Laws of 1848, chap. 40, § 8; S. & J. on Corp. § 73; Laws of 1866, chap. 838; *Crocker* v. *Whitney*, 71 N. Y. 161; *Hazelhurst* v. *S. R. R. Co.*, 43 Ga. 13.) The effect of the statute cannot be evaded by making the purchases or subscription of stock in the name of its officers; whether in the name of the company or its officers, the object contemplated was the same and equally unlawful. (*V. R. R. Co.* v. *L. E. I. Co.*, 18 N. W. Rep. 486; *N. J. C. R. R. Co.* v. *P. R. R. Co.*, 31 N. J. Eq. 475; *Atty.-Gen.* v. *N. Y. & E. R. R. Co.*, 5 Cent. Rep. 105.) It is against public policy to permit one corporation to invest its funds in the stock of another company. (*Sumner* v. *Marcy*, 3 W. & M. 105; *Berry* v. *Yates*, 24 Barb. 199.) Payment of the amount subscribed for does not validate the subscription. (*M. S. Bank* v. *M. A. Co.*, 24 Conn. 156; *V. R. R. Co.* v. *L. E. I. Co.*, 18 N. W. Rep. 486; *Berry* v. *Yates*, 24 Barb. 199; *Thomas* v. *R. R. Co.*, 101 U. S. 71; *Sumner* v. *Marcy*, 3 W. & M. 105.) If the plaintiff was not the legal owner of the stock mentioned in defendants' exhibit at the time it was executed, then for that reason alone that agreement was void. It had no right to go out in the market and purchase sufficient stock to enable it to comply with the terms of that agreement. (*R. & S. R. R. Co.* v. *Deems*, 43 N. Y. 127; *Sistare* v. *Best*, 88 id. 533; *Thomas* v. *Railroad Co.*, 101 U. S. 71; *Downing* v. *M. W. R. R. Co.*, 40 N. H. 230.) The contract under which the note in suit was made is executory, hence so far as the note is concerned, the contract has not been performed; and if unauthorized, that part of it clearly cannot be enforced. Its illegality can be taken advantage of by the defendants. (*Thomas* v. *Railroad Co.*, 101 U. S. 71.) The purported agreement is void as it provides that said George C. Edwards shall be elected trustee of the Holmes & Wessell Metal Company until after the payment of all of said

notes; it also contains restrictions as to the salaries of its officers. This is clearly against public policy, as interfering with and restricting or depriving stockholders of rights expressly given to them by statute and an attempt of the Holmes and Griggs as a corporation to control another corporation, a corporation within a corporation. (*Bank of Salina* v. *Atwood*, 31 N. Y. 473.) The action cannot be sustained for the reason that there has been no tender of the stock before its commencement. (*O. N. Bank* v. *Fant*, 50 N. Y. 476; *Ware* v. *Lippencott*, 8 Cent. Rep. 572; *Summers* v. *Sluth*, 45 Ind. 598; *Clark* v. *C. Ins. Co.*, 57 id. 135; *Bank of Salina* v. *Alvord*, 31 N. Y. 473.)

*Sidney S. Harris* for respondent. The metal company holds plaintiff's property which it has never returned, and cannot deny plaintiff's title to the stock issued to Holmes and Edwards which it treated as payment for the property purchased, the entire transaction having been executed and still remains executed. (*Treadwell* v. *S. M. Co.*, 7 Gray, 393; *Hodges* v. *N. E. S. Co.*, 1 R. I. 347; *Howe* v. *B. C. Co.*, 16 Gray, 493.) The state alone can object to the executed transaction by which the plaintiffs sold their plant and received payment through Holmes and Edwards in the stock of the metal company. (*Kelsey* v. *P. P. Co.*, 19 Abb. [N. C.] 443; *T. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 42 Hun, 496; *Jones* v. *G. & I. Co.*, 11 Otto, 622; *Standard Oil Co.* v. *Scofield*, 16 Abb. [N. C.] 378; *Woodruff* v. *E. R. R. Co.*, 93 N. Y. 618, 619; *D. M. Co.* v. *Roeber*, 106 id. 473; *W. A. Co.* v. *Barlow*, 63 id. 62; *Starin* v. *Edson*, 112 id. 215; *W. C. Co.* v. *Yuengling*, 57 Hun, 203.) It is no defense to say that the transaction between the plaintiffs and the metal company, by which the plaintiffs acquired the 1,440 shares of stock sold to defendants, was *ultra vires*. (*Sistare* v. *Best*, 88 N. Y. 534; *Currie* v. *White*, 45 id. 822.) No tender was needed. The stock was placed, as the contract requires, in the custody of Edwards as trustee, and was to remain there until the notes were paid, and when paid and as paid the defendants would

get their stock from Edwards, their trustee. The title to the stock was in defendants from the time the notes were executed and delivered. (*Hayden* v. *Demets*, 53 N. Y. 426; *Currie* v. *White*, 45 id. 822; *Johnson* v. *Underhill*, 52 id. 203; *Reed* v. *Hoyt*, 109 id. 659; *Coonley* v. *Anderson*, 1 Hill, 519; *Brownson* v. *Wiman*, 10 Barb. 424; *Lopping* v. *Root*, 5 Cow. 414; *Chaplin* v. *Potter*, 1 Hilt. 366; *Cornwall* v. *Haight*, 21 N. Y. 462; *Finney* v. *Ashley*, 15 Pick. 546; *Mullock* v. *Kinglake*, 10 A. & E. 50; *Wilks* v. *Smith*, 10 M. & W. 355; *Campbell* v. *Jones*, 6 T. R. 570, 614; *Northrup* v. *Northrup*, 6 Cow. 296.) When the note in suit became due, plaintiff demanded payment at the place designated in the note, 525 West Twenty-fourth street, and was ready and willing to deliver the stock, and defendants did nothing. It was bound to do nothing more. (*Woolner* v. *Hill*, 93 N. Y. 581; *Haynor* v. *A. P. L. Ins. Co.*, 69 id. 439; *Hartley* v. *James*, 50 id. 38; *Lawrence* v. *Miller*, 86 id. 137; *Kerr* v. *Purdy*, 50 Barb. 31; *Freeson* v. *Bissell*, 63 N. Y. 168.) The waiver of presentment of the note and demand and notice dispensed with any formal tender, if such tender was necessary. (*Coddington* v. *Davies*, 1 N. Y. 186.) A contemporaneous collateral agreement must be between the parties to the note, and no others, in order to be available as a defense. (2 Pars. on Bills, 536.)

HAIGHT, J. This action was brought to recover the amount of a promissory note bearing date December 1, 1884, executed by the defendant, The Holmes & Wessell Metal Company, and indorsed by the defendants Morse and Shonnard. The defenses were *ultra vires*, no consideration, and a non-tender of certain stock for the purchase-price of which the note was given. The plaintiff is a manufacturing corporation organized under the general act of 1848 for the purpose of manufacturing sheet and rolled brass wire, tubing and other articles composed wholly or in part of metal, in the city of New York. Its president was Charles E. L. Holmes, and its secretary and treasurer was George C. Edwards. On the 12th day of July, 1881, Holmes and

Edwards entered into an agreement with the defendants Shonnard, Morse and one Charles Wessell to organize a new company for the manufacture of brass, nickeline alloys and other composite metals, under the corporate name of the Holmes & Wessell Metal Company. The capital stock of such company to be $100,000, the whole amount to be issued and paid up in cash; three-fourths thereof to be subscribed and paid by Holmes and Edwards, and the remaining one-fourth by the other parties to the agreement. The agreement, in its preamble, recites that Holmes and Edwards propose to transfer the rolling mill belonging to the plaintiff, including all of the machinery, tools and appliances connected therewith, together with the lease of the premises occupied by the plaintiff, for the sum of $50,000. Subsequently and at an annual meeting of the plaintiff's stockholders held on the 20th day of July, 1881, the president and secretary were instructed to sell to the Holmes & Wessell Metal Company the entire machinery and plant owned by the plaintiff, for the sum of $50,000; and also authorized them to sell to the same company all the material manufactured, unmanufactured and in process of manufacture owned by the plaintiff, and to also subscribe for 3,000 shares of the capital stock of the company, and to pay for the same out of the proceeds of the sale of the mill and materials.

It further appears that the Holmes & Wessell Metal Company was incorporated on the 15th day of July, 1881, and that Charles E. L. Holmes subscribed for two thousand shares and George C. Edwards one thousand shares of the capital stock. Thereafter and on the 23d day of July, 1881, the new company at a meeting of its stockholders, authorized the purchase from the plaintiff of its plant and machinery, and to pay therefor the sum of $50,000, and for the entire stock of materials manufactured and unmanufactured owned by the plaintiff the sum of $31,333.96; and, on the first day of September thereafter, such sale was completed by the transfer of the plaintiff company to the defendant company of its entire plant, machinery, etc., and, in payment therefor, the defendant company issued to George C. Edwards, trustee, the stock

subscribed for by Holmes and Edwards, amounting to $75,000, and the balance, $6.333.96, was paid in cash.    After such transfer, the plaintiff discontinued its business.

On the 1st day of December, 1884, the plaintiff entered into a contract with the defendants, Morse, Shonnard and said Charles Wessell, in which the plaintiff agreed to sell to the other parties thereto 1,440 shares of the stock of the defendant company, standing in the name of Edwards, as trustee, for the sum of $30,000, payable, $5,000 in cash and the balance by certain promissory notes, of which the note in suit is one. The agreement further provided that the stock should remain in the name of Edwards, or some other officer of the plaintiff, as trustee; that it might be voted upon by him until delivered as specifically provided in the contract.

It is doubtless true that a corporation cannot purchase, or deal in stocks of other corporations unless expressly authorized by law so to do.    (*Talmage* v. *Pell*, 7 N. Y. 328; *Berry* v. *Yates*, 24 Barb. 200 ; *Milbank* v. *N. Y., L. E. & W. R. R. Co.*, 64 How. Pr. 20; *Mechanics' Mut. Savings Bank* v. *Meriden Agency Co.*, 24 Conn. 156; *Central R. R. Co.* v. *Pennsylvania R. R. Co.*, 31 N. J. Eq. 475; *Hazlehurst* v. *Savannah R. R. Co.*, 43 Ga. 57; *Valley R. Co.* v. *Lake Erie Iron Co.*, 18 Northeastern Rep. 486 ; *People ex rel.* v. *Chicago Gas Trust Co.*, 130 Ill. 268–284 ; *Franklin Co.* v. *Lewiston Institution for Savings*, 68 Me. 43 ; *Hill* v. *Nisbet*, 100 Ind. 341–349.)

It is equally true, however, that it may do whatever may be necessary in the exercise of its corporate franchises.    The selling of property and collection of debts is among the powers given ; and hence, it may take title to all kinds of property, even the stock of another company, in the payment of a debt. (*Talmage* v. *Pell, supra*, and cases above cited.)

The statute under which the plaintiff was incorporated provides that "it shall not be lawful for such company to use any of their funds in the purchase of any stock in any other corporation." (Laws 1848, chap. 40, § 8.)    The funds here

spoken of evidently mean the money of the company, and the statute was not intended to limit the powers of the corporation beyond that already indicated.

The plaintiff was a private manufacturing corporation. It exercises no powers of a public nature, and has attempted no combination by which the public may in any manner be prejudiced. There are, consequently, no questions affecting public policy to be considered. The purpose of the company is expressed in a preamble to the resolutions adopted authorizing the sale of its plant and stock of materials on hand to the defendant company. It was, in short, to increase the business of the stockholders by adding to the manufacture of brass that of German silver and nickel alloys. The scheme adopted was the organization of a new corporation, bringing in some other persons with additional capital. The stock in the new company was subscribed for by Holmes and Edwards individually, and the stock, when finally issued, was issued to Edwards. It is true, he takes it as trustee and holds it as such for the plaintiff, but this we do not regard as necessarily *ultra vires.* The plaintiff had the right, with the consent of its stockholders, to sell its plant and retire from business; and it appears from the evidence in this case that the consent of all the stockholders was given to the sale that was made.

In *Kent* v. *Quicksilver Mining Co.* (78 N. Y. 159–186), FOLGER, J., in delivering the opinion of the court says that " A corporation may not do acts which affect the public to its harm, inasmuch as they are *per se* illegal, or are *malum prohibitum.* Then no assent of stockholders can validate them. It may do acts not thus illegal, though there is want of power to do them, which affect only the interests of the stockholders. They may be made good by the assent of the stockholders, so that strangers to the stockholders, dealing in good faith with the corporation, will be protected in a reliance upon those acts."

In the case of *Treadwell* v. *Salisbury Mfg. Co.* (7 Gray, 393–405), it was held that the directors of a manufacturing corporation may sell the whole property of the corporation to

a new corporation, taking payment in shares of stock of the new company, to be distributed among the stockholders of the old company. In *Howe* v. *Boston Carpet Co.* (16 Gray, 493), it was held that one manufacturing corporation may take the shares of another in payment of a debt. CHAPMAN, J., in delivering the opinion of the court, in commenting upon the case of *Treadwell* v. *Salisbury Mfg. Co.* (*supra*), says that " while corporations *quasi* public may be restrained and directed in the management of their affairs, yet corporations established for trading and manufacturing purposes, may wind up their affairs whenever they think proper to do so, and in the manner adopted in that case. The legality of the transaction could not have depended on the intention of the corporation to wind up its affairs immediately. If it had taken the stock in the payment for goods, or for the sale of a building or land, or water power, which it did not want or desire to sell, while it still carried on its business, the act must have been equally legal."

In *Hodges* v. *New England Screw Co.* (1 R. I. 312–347), the facts were, in many respects, similar to those under consideration. GREENE, Ch. J., says : " Nor have we any doubt that the screw company might have rightfully taken this stock in the iron company in payment for their rolling-mill, if it had been taken with a view to sell it again, and not permanently hold it. Again, it is to be observed the directors were not investing the funds of the screw company in the stock of the iron company. They had on hand an unsalable rolling-mill, and they owed a heavy debt for it, and one great object in taking the stock in the iron company was to realize for the rolling-mill, and in part pay thereby the debt." (*State of Kansas* v. *Western Irrigating Canal Co.*, 40 Kas. 96 ; *Leathers* v. *Janney*, 41 La. 1120 ; *Hibernia Insurance Co.* v. *St. Louis and New Orleans Transp. Co.*, 8 Federal Rep. 516 ; *Taylor* v. *North Star Gold Mining Co.*, 79 Cal. 285 ; *Miners' Ditch Co.* v. *Zellerbach*, 37 id. 543 ; *State* v. *Butler*, 86 Tenn. 614 ; Morawetz on Private Corporations, § 212.)

The plaintiff has sold its rolling-mill, machinery, etc., to the defendant. It has taken stock in the latter company in payment therefor. Inasmuch as this was done with the consent of all of the stockholders, it being the act of a private corporation, not in any manner harming the public, we see no reason for condemning its title to the stock so obtained. (*Palmer* v. *Cypress Hill Cemetery*, 122 N. Y. 429–435.)

But, assuming the transaction to have been *ultra vires*, the defenses interposed would still be unavailable. The plaintiff has the stock and has paid for it. It cannot be recovered back by the defendant, for the transaction is completed and closed. Whilst the contract remained executory, if it was unauthorized, a stockholder or person interested might have interfered by injunction, and prevented the transfer of the property of the plaintiff to the defendant. But the contract having become executed, the title of the stock now vests in the plaintiff, and it has the power to sell and dispose of the same. (*Sistare* v. *Best*, 88 N. Y. 527–543; *Millbank* v. *N. Y., L. E. & W. R. R. Co.*, *supra.*)

The contract under which the note in suit was given was made in December, 1884, nearly four years after the plaintiff became the owner of the stock. No claim is made that that contract is for any reason illegal or void. Numerous cases are found in which the courts have refused to execute contracts that were *ultra vires*, but this action is not based upon such a contract. The courts will not permit the plea of *ultra vires* to prevail whether interposed for or against a corporation, where it would not advance justice, but would accomplish a legal wrong. (*Rider Life Raft Co.* v. *Roach*, 97 N. Y. 378–381; *Whitney Arms Co.* v. *Barlow*, 63 id. 62.)

To hold that the plaintiff could not dispose of the stock would deprive it of the consideration received for the transfer of its rolling-mill and material, thus accomplishing a wrong and not advancing justice.

Our conclusions are that it had title to the stock and that, consequently, there was a valuable consideration for the note in suit.

The question raised in reference to the non-tender of the stock was properly disposed of by the General Term.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed. _____