CIRCUIT COURTS. **275**

Norwalk Savings Bank Co. v. Norwalk Metal Spinning and Stamping Co. et al.

# BUILDING ASSOCIATIONS.

[Huron Circuit Court, 1897.]

King, Haynes, and Parker, JJ.

*The Norwalk Savings Bank Co. v. The Norwalk Metal Spinn-
ing and Stamping Co. et al,

A Manufacturing Corporation may Lawfully Become a Member of a Loan
Company.

A manufacturing corporation may lawfully become a member of a loan company
for the purpose of borrowing money for any use that it had; but, if it did
not have that power expressly or by law, still, having borrowed money from
such association and received its benefits, and having contracted and agreed
to pay it back and also agreed that it should be a lien upon its property, that
contract a court of equity will execute, and they will not listen to the plea
of the manufacturing corporation after it had used the money, much less
that of another general creditor, that the corporation orginally had no power
to borrow.

King, J.

The case of the Norwalk Savings Bank Company, plaintiff in error,
v. The Norwalk Metal Spinning and Stamping Company et al., defend-
ants in error, was tried in this court on appeal from the court of common
pleas. It is an action brought by the plaintiff for the purpose of mar-
shaling liens upon certain real estate of the Norwalk Metal Spinning
and Stamping Company, the debtor in the case.

Among other liens is a mortgage securing a loan to the Home
Savings and Loan Association, who are defendants here.

Another lien is a judgment in favor of the plaintiff, the Norwalk
Savings Bank Company, and I think, a judgment in favor of some other
bank.

This is a case between the plaintiff, The Norwalk Savings Bank
Company and the Home Savings and Loan Association as to priority,
the plaintiff having a judgment which it recovered upon a debt owing
to it by the defendant, The Metal Spinning and Stamping Company,
The Home Savings and Loan Association having a mortgage which was
executed to it under the laws of the state of Ohio, on the 7th, day of
May, 1892, and the judgment of the plaintiff having been recovered
sometime later. The plaintiff has no other security than that which
arose from the judgment lien, with possibly a levy of execution issued
thereafter.

On the 7th day of May, 1892, this Metal Spinning and Stamping
Company made application to become a member of the Home Savings
and Loan Association, and was thereupon assigned thirty shares of stock,
upon which concurrently with this application for membership, there
was a loan to it of three thousand dollars, and upon which it agreed to
pay a certain sum per month as a premium which it had offered to pay
for this loan, a certain sum per month for the interest which would ac-
crue upon it, and another certain sum which should be credited upon the
principal.

The note which was executed by the Norwalk Metal Spinning and
Stamping Company, reads as follows:

---

* For common pleas decision, see 6 Dec. 70

"NORWALK, OHIO, May 2, 1892.

Received of the Home Savings and Loan Company of Norwalk, Ohio, three thousand dollars as a loan on thirty shares of stock, No. 1276, owned by The Norwalk Metal Spinning and Stamping Company in said company. We agree to pay said company monthly not less than $30, which shall be applied as follows:

"*First* – To the payment of any fees or other assessments made us against us, in pursuance of the constitution or by-laws of said company;

"*Second*—To the payment of the premium for precedence due on said loan, amounting to $4.50 per month;

"*Third*—To the payment of the interest due on said loan, amounting to $15 per month.

"*Fourth*—The balance of said payments shall be credited as dues on said stock. Said payments shall be continued until the dues so credited on said stock together with the dividends declared thereon shall equal the amount loaned.

"Should we fail for three months to pay said monthly dues then the whole amount of said loan shall at once become due and payable.

"THE NORWALK METAL SPINNING AND STAMPING COMPANY,

"By D. W. VAIL, President."

As I have said, a mortgage was given securing the execution of that contract. The Home Savings and Loan Company is an institution organized under the laws of the state of Ohio, having a capital stock of a million and a half, and for the purpose of transacting its business, has adopted certain by-laws which, so far as this question is concerned, follow the statute. They provide, among other things, that there may be depositing members; that there may be members simply owning stock --paid up stock ; that there may be borrowing members; and it provides that every member of the company shall be entitled to borrow from the company a sum equal to the face value of the stock ; that such right, however, shall be subject to the restrictions hereinafter provided, which may apply to the payment of premiums.

It provides also, that the interest upon loans shall be substantially 6 per cent. per annum ; in other words, 50 cents per month on each $100.

It provides in section 4 of article 14, that "each borrowing member shall pay to the company monthly, not less than one dollar on each one hundred dollars of loan made to him, which shall be applied as follows:

"*First*—To the payment of any fines or other assessments made against him in pursuance of the by-laws."

That is the obligation which is included in the contract here.

"*Second*—To the payment of the premium due on such loan."

That is included here, fixed at the sum of $4.50 per month on this loan.

"*Third*—To the payment of the interest due on such loan."

And that is also fixed in the contract at $15 per month.

"*Fourth*—The balance of such payment shall be credited as dues on the stock on which such loan is taken. Such payments shall be continued until the dues so credited on the stock, together with the dividends declared thereon, shall equal the amount loaned. The loan and stock upon which it was taken shall then both be canceled, and the borrower's mortgage released."

"Borrowers may also at any time, pay up in full one or more shares of stock on which a loan has been taken, and have such shares and a proportionate amount of the loan canceled.

"And the board of directors may provide by-laws for the annual cancellation of so many shares of stock on which a loan has been taken, as may be warranted by the credits on the books of the company to said stock, and for a proportionate reduction of monthly dues, interest and premium; but no dividend already earned shall be forfeited by applying such credit on the loan."

It is contended here by the judgment creditor—the bank—that the Metal Spinning and Stamping Company had no power in law to become either a member of this association, or to make a loan from it; that the essential feature of making this loan was membership in the loan company, and that being the essential feature, a corporation in Ohio,—it is argued,—cannot hold stock, nor become a member of another corporation.

I do not intend to discuss this very extensively, but in the first place, it may be noted that there is no statute in Ohio prohibiting one corporation from holding stock in another. The entire basis for that claim is made in the case decided in 36 O. S. There is no doubt that that case fully supports that claim; it is broad and complete on that subject. But, in our judgment, this case in 36 O. S. can have no application to the facts in this case, for the reason that it is not like this case. There is no attempt in fact or in law, on the part of the Metal Spinning and Stamping Company to become a member of another corporation, to buy its stock and control its business, for the reason that the statute has absolutely limited the power of any person, natural or artificial, to own and control stock in building and loan associations.

The statute provides that however much stock a person may own, he can cast but twenty votes in such institution. Preceding that statute, there was one which only allowed a person to own twenty shares of stock; but that has been amended, and there is now no limitation upon the number of shares of stock that may be owned by a person in a building and loan association. But the power to vote is controlled and limited.

Now, if there were no statute upon that subject in Ohio, limiting and controlling the power of one corporation to take stock in another, I take it that the law is, that it would be permitted to do so. Upon that subject, I quote from a very recent and able work upon corporations, paragraph 5697, in 4th Thompson on Corporations:

"It is believed to be in conformity with all judicial holdings, to say that every corporation, except those organized for public or governmental purposes, which may require the use of money for carrying out the purposes of its organization, has an implied or incidental power to borrow money for such purposes, although no such power is expressly granted in its charter, and to give the customary evidences of debt therefor; and to add to this the customary security."

Again, the same authority says, in the 5th volume, paragraph 6131:

"With this important exception," (to wit, public corporations—having said that public corporations must have express power)— "it may therefore be laid down that every private corporation, in the absence of any prohibition in its charter, or governing statute, may borrow money for the purpose of carrying out the lawful objects of its incorporation,

and may mortgage its real and personal property to secure the loan."

And to the same effect, is the case of *Burt et al.* v. *Rattle*, 31 O. S., 116.

Again, Thompson says in paragraph 6050:

"If it be a sound principle that a corporation may, in order to carry out the legitimate objects of its creation, deal precisely as an individual may, except in so far as it is restrained by its charter or governing statute—then the conclusion follows that it may borrow money and issue negotiable bonds as security therefor, the same as an individual may do."

So much for the general rule. This is not entirely without authority in this state. In the 37 O. S., 208, in the case of *Bank* v. *Bank*, in the opinion delivered by Okey, J., this language is used on page 215:

"Nothing is better settled than that shares in the capital stock of a corporation are the subject of a pledge. A national bank may hold such shares in the capital stock of another national bank, as collateral security for a loan or loans made or to be made. *National Bank* v. *Case*, 99 U. S., 628. Moreover, an objection to such transaction could not be made in this action. Where, as in this case, the pledgor executes an irrevocable power of attorney, authorizing a transfer of such shares on the books of the bank issuing the same, the pledgee has the right to demand that such transfer be made."

I need not dwell longer upon that point. The judge delivering that opinion, disposes of that question very briefly. There are numerous authorities supporting that holding. In Thompson on Corporations, paragraph 5719, the same doctrine is stated in the text. In the 35 Federal Reporter, 161, is a case in point and also 127 N. Y., 252, to which I wish to refer. On page 257, the court say, in the opinion delivered by Justice Haight:

"It is doubtless true that a corporation cannot purchase or deal in stocks of other corporations unless expressly authorized by law so to do. * * *

"It is equally true, however, that it may do whatever may be necessary in the exercise of its corporate franchises.

"The selling of property and collection of debts is among the powers given; and hence, it may take title to all kinds of property, even the stock of another company in the payment of a debt. *Talmage* v. *Pell*, 7 N. Y., 328."

The statute under which the plaintiff was incorporated provides that:

"It shall not be lawful for such company to use any of their funds in the purchase of any stock in any other corporation.

"The funds here spoken of evidently mean the money of the company, and the statute was not intended to limit the powers of the corporation beyond that already indicated.

"The plaintiff was a private manufacturing corporation. It exercises no power of a public nature, and has attempted no combination by which the public may, in any manner, be prejudiced. There are, consequently, no questions affecting public policy to be considered. The purpose of the company is expressed in a preamble to the resolutions adopted authorizing the sale of its plant and stock of materials on hand to the defendant company. It was, in short, to increase the business of the stockholders, by adding to the manufacturing of brass, that of German silver and nickel alloys. The scheme adopted was the organization of a new corporation bringing in some other

persons with additional capital. The stock in the new company was subscribed for by Holmes and Edwards individually, and the stock, when finally issued, was issued to Edwards."

As stated in 78 N. Y., 159, in the opinion delivered by Folger, Justice:

"A corporation may not do acts which affect the public to its harm, inasmuch as they are, *per se*, illegal, or are *malum prohibitum*. Then no assent of stockholders can validate them. It may do acts not thus illegal, though there is want of power to do them, which affect only the interest of the stockholders. They may be made good by the assent of the stockholders, so that strangers to the stockholders dealing in good faith with the corporation will be protected in a reliance upon those acts.

"Referring to 7 Gray, 393, it was held that the directors of a manufacturing corporation may sell the whole property of the corporation to a new corporation, taking payment therefor in shares of the new corporation, to be distributed among those of the old stockholders who are willing to take them."

In 16 Gray, 493, it was held:

"One manufacturing corporation may take shares of another in payment of a debt."

Justice Chapman says (citing *Treadwell* v. *Salisbury, Manuf. Co.*, 7 Gray, 393): "In that case, it is said that while corporations *quasi* public may be restrained and directed in the management of their affairs, yet corporations established for treating and manufacturing purposes may wind up their affairs whenever they think proper to do so, and in the manner adopted in this case."

In the case in the 127 N. Y., *supra*, the company had sold all its property to another company and taken payment therefor in shares of the other company. The court add this (127 N. Y., 260), which is pertinent:

"But, assuming the transaction to have been *ultra vires*, the defenses interposed would still be unavailable. The plaintiff has the stock and has paid for it. It cannot be recovered back by the defendant, for the transaction is completed and closed. Whilst the contract remained executory, if it was unauthorized, a stockholder or person interested might have interfered by injunction, and prevented the transfer of the property of the plaintiff to the defendant. But the conract having become executed, the title of the stock now vests in the plaintiff, and it has the power to sell and dispose of the same.

"The contract under which the note in suit was given was made in December, 1884, nearly four years after the plaintiff became the owner of the stock. No claim is made that that contract is for any reason illegal or void. Numerous cases are found in which the courts have refused to execute contracts that were *ultra vires*, but this action is not based upon such a contract. The courts will not permit the plea of *ultra vires* to prevail whether interposed for or against a corporation, where it would not advance justice, but would accomplish a legal wrong."

I do not care to stop to read it, but in support of the doctrine which I have been announcing and in line with the authorities which have been named, I will say that the case which was cited in the 38 Northeastern Reporter, which may be found in 151 Illinois, 231 to 237, is not only in line with these authorities, but it is also an authority absolutely applicable to the case at bar and holds distinctly that a manufacturing corporation may subscribe for and receive shares of stock in a building and loan

association, and a loan based upon such shares is legal and will not be held void. It is also an authority for a second proposition that the debtor is estopped from making this defense.

I do not care to rest the opinion entirely upon the authority of that case. I say this with reference to it. There is no case that I know of anywhere, that denies the soundness of the doctrine stated in 151 Illinois.

It is in line with the authorities which I have just read; and every book I have been able to lay my hands on in discussion of this question, is an authority in the same line, to wit: That a debtor, and no one holding or claiming under him or through him, or holding or claiming an interest in his property, will be heard to deny the right of the debtor to borrow money where the debtor has received the full value of his loan and has expended it—I don't care what the debtor is—what his organization is; unless there is a statute prohibiting him from borrowing money, that would be notice to all the world; but, in the absence of express law prohibiting the debtor from borrowing money, any person engaged in the business of loaning money, may loan him money and he may borrow, and having borrowed—even though it is in excess of the statutory power—in excess of the power by its charter, if a corporation, it will not be heard to deny that power; having received the money, it must repay the loan accredited by the contract and it will be enforced by all the courts and by all the authorities.

An authority to that effect is *Bates* v. *Loan Association*, 42 O. S., 655 to 671. That was a case in which money was borrowed of a building and loan association when the law authorized loans to depositing members. The court say :

"A person who applies to a building and loan association for a loan of money, and deposits therewith a sum of money however small, for the purpose of making himself eligible as a borrower, and thereby receives a loan, is estopped, when sued for the money by the association from denying that he was, in fact, a depositor of the association."

The first question made in the case was, that the statute required them to be members or depositors, and the proof showed that they deposited two dollars with the loan company and took out a loan of severa thousand dollars, and it was claimed that they were not existing depositors.

A case which is more in point, is the case reported in 10 Am. Law Rec. 485, (6 Dec. R. 1108). It was the case of *The Victoria Building Association* v. *The Arbeiter Bund*, decided by the Hamilton county district court, December 2, 1881. The Arbeiter Bund was a corporation, but the question of its right to borrow and mortgage, was not raised in the case. It became a member of the loan company and no question was made in the case about its authority to do so.

The court found that it was the owner of twenty-five shares of stock, and that that loan had been made to it upon that basis. In an action to foreclose the mortgage, the company set up that it had no power to make the loan. The court, by Judge Burnet, say:

"Now, the Arbeiter Bund has received the money loaned. It has given its mortgage. It never proposed" (it had gone into the hands of a receiver), "and now it is not in its power to refund the money received and to cancel the transaction. It is estopped, therefore, to deny that The Victoria Building Association might make a loan which it received, and third parties who would make the defense in the interest of the Arbeiter Bund, in order that their claims may come in and have precedence,

CIRCUIT COURTS 281

Norwalk Savings Bank Co. v Norwalk Metal Spinning and Stamping Co. et al.

are equally estopped, unless they fulfill the equitable obligation which rests upon the Bund, to reinstate the building association in its former rights, its former position."

The court say that question was recently decided by the Supreme Court of the state, in the case of *Samuel W. Elliott, v. The Greenfield Building and Savings Association*, and the Supreme Court hold that the mortgage that Elliott gave was good as against a subsequent mortgagee who had advanced his money upon the faith of a mortgage.

So that, according to this authority, the Supreme Court has held that a debtor who had no power to borrow from such an association on more than twenty shares of stock would not be heard to claim that he had not that power, when he had borrowed upon a larger number of shares, to-wit: thirty-seven.

The statutes of Ohio, and the general law of manufacturing corporations authorize loans to be made; authorize corporations to borrow money. The statute authorizes building and loan companies to loan to its members only, or to depositors.

In the 42 O. S., however, we find that a debtor will not be heard to deny that he is eligible to receive the loan which he has made, and if he is a member and receives a loan on account of such membership, on which he still pays dues, he will not be heard to deny his membership.

Take this case: This manufacturing corporation was never a stockholder in this loan company; never subscribed nor received any stock. But it became nominally a subscriber for stock when its necessity to borrow money arose. It made a formal application for the issue of stock. It did nothing else; it paid no money for any stock. I am not sure whether a certificate was issued, or not; it makes no difference whether there was, or not. It became upon the books of the company a stockholder entitled to vote, according to the statute of the state, twenty votes on account of this loan; but the money paid by it went into the treasury of the loan company, and this loan being satisfied and extinguished—the moment that the loan is extinguished, the stock is extinguished and the borrower's rights in the company immediately cease.

In a case where it was provided in the mortgage that it should be security for fines as well as the loan, the court, in *Hagerman v. Building and Savings Association*, 25 O. S., 186, 204, say:

"Before the loan is advanced, the stock of the member is a security in the hands of the company for the payment of fines. By making the loan, that security is lost; and we see no reason why the taking of mortgage security in such case, for the payment of future fines, should not be regarded as a transaction in due course of its business. The power to assess and collect a fine, reasonably implies a power to take security for its payment."

I only read that because of the expression of the court, that the moment a loan is made, the security which the company had previously, to enforce the payment of its fines, ceases. So that, all the money paid in is to apply upon the loan. The contract in this case provides that all the money, save and except that amount which they agree to pay for the privilege of getting this money, shall be credited upon the interest and upon the principal, as well as all dividends, which moneys so paid may earn. So that the borrowing member has two sources of income to pay upon his debt; the money which he pays is not only credited upon the

loan, but becomes a source of earning power, and that which it earns is also credited upon the loan.

We think this corporation might lawfully become a member of the loan company for the purpose of borrowing money for any use that it had ; but, if it did not have that power expressly or by law, still, having borrowed the money and received its benefits, and having contracted and agreed to pay it back and also agreed that it should be a lien upon its property, that contract a court of equity will execute, and they will not listen to the plea of the manufacturing corporation after it had used the money—much less that of another general creditor—that the corporation originally had no power to borrow.

We say, as in the language quoted in the 127 N. Y., *supra*, that to hold otherwise would not advance justice, but it would accomplish a legal wrong, and that a court of equity does not sit to do. Therefore, the decree may be drawn giving the loan company the first lien and the bank the second.