## HURD v. NEW YORK & COMMERCIAL STEAM-LAUNDRY CO.

(Supreme Court, Appellate Division, First Department.   June 8, 1900.)

1. FRAUDULENT CONVEYANCES—SALES OF CORPORATE PROPERTY—CONSIDERA-
TION.

The C. Co., of which R. was president and treasurer, transferred all its
personal property, except the book accounts and lease of real property,
to a new company, of which R. was made president. The consideration
for the transfer was a certain number of shares of stock in the new com-
pany, which were issued to the wife of R., in whose name they remained
for a few months, were then surrendered, and a new certificate issued to
R., as treasurer of the C. Co., which certificate was again surrendered,
and the stock divided among the stockholders of the C. Co. *Held*, that
the transfer was not fraudulent as against a creditor of the C. Co., there
being no evidence that the book accounts were not sufficient to pay the
indebtedness, nor that the stock of the new company was not worth par.

2. SAME.

That the stock was issued to the wife of R. did not invalidate the sale,
as this was subsequently corrected, and no one was prejudiced by the act.

Rumsey, J., dissenting.

Appeal from special term, New York county.

Action by Jehiel T. Hurd, receiver of the Commercial Steam-
Laundry Company, against the New York & Commercial Steam-
Laundry Company to decree a conveyance fraudulent as to creditors.
From a judgment in favor of plaintiff (60 N. Y. Supp. 813), defendant
appeals.   Reversed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, and
INGRAHAM, JJ.

Delos McCurdy, for appellant.
Edwin C. Dusenbury, for respondent.

HATCH, J.   This action was brought by the plaintiff, as receiver
of the Commercial Steam-Laundry Company, Limited, to procure a
judgment declaring that certain personal property transferred by
the said laundry company to the defendant was impressed with a
trust in favor of creditors, and constituted a trust fund, in the hands
of the defendant, for the benefit of creditors and stockholders of the
first-named company, and that the defendant company account
therefor; also that the plaintiff be awarded judgment for the value
of the property.   Upon the trial it appeared that there were no
other creditors or persons interested in the property except the
plaintiff, and the court having determined that the transfer was void
as against creditors of the old company, as having been made in
fraud of their rights, it directed judgment in favor of the plaintiff
for the amount of the claim represented by him.   The evidence dis-
closed that prior to the creation of the defendant corporation there
was in existence the company of which the plaintiff is receiver, and
that one Thomas E. Sloan was engaged in the laundry business
under the name of the "New York Steam-Laundry Company."   Of
the former company, Anthony O. Rowe was the president and treas-
urer.   Rowe and Sloan entered into an agreement by which each
agreed to contribute machinery and cash and organize the defendant

company. Sloan made his contribution of $10,000 in machinery and $15,000 in cash. Rowe contributed $5,000 in cash, and procured the Commercial Steam-Laundry Company, Limited, through action of its stockholders, to execute a bill of sale of its personal property, valued at $20,000, to the defendant. The only property which the company possessed after executing the bill of sale was some book accounts and a lease of real property with an option of purchase. What was the value of these items of property does not appear. The consideration for the transfer of the property to the defendant, as expressed in the resolution authorizing the same, was 200 shares, of the par value of $100 each share, of the stock of the defendant. This stock, pursuant to the resolution, was to be delivered to Rowe, the president and treasurer of the old company. The defendant company was duly organized, with Rowe, Sloan, and two other persons as incorporators. The only person connected with both corporations was Rowe. The latter was elected president, and Sloan treasurer. By direction of Rowe, the 200 shares of stock in payment for the transfer of the property were issued to Margaret H. Rowe. This issue continued to stand in this form for about seven months, when the certificate issued to Margaret was surrendered, and a new certificate was issued to Anthony O. Rowe, as treasurer of the old company. Shortly afterwards this certificate was surrendered, and the stock was then divided among the stockholders of the old company. When the bill of sale was executed the old company was indebted to Eliza N. Hall upon an unliquidated claim, which was the subject of dispute, upon which she brought action, obtained a judgment, and issued execution, which was returned unsatisfied. Thereupon she brought an action against the old company for the sequestration of its property, in which final judgment was entered, the plaintiff was appointed receiver, qualified as such, and thereupon brought this action.

The court has held that the transfer of the property of the old company to the defendant was not in the regular course of business, and was fraudulent and void as against creditors of the company. This ruling proceeds upon the ground that the sale of the property was, in effect, a transfer of all the property of the corporation; that it necessarily operated to prevent performance by it of its corporate functions; and that it was the intent of the parties interested to deprive it of its power to carry on its business; and that in particular it effected the creation of a new corporation by the consolidation of Sloan's business with that which it had formerly carried on. The evidence in the case justifies the finding that there was intended to be a consolidation of the corporate interests and the business represented by Sloan. The defendant in fact took much of the custom, if not all, which had formerly gone to the old company, and it was the evident intent of the stockholders of the old company to cease to perform its corporate functions, and, if not to formally dissolve, to go into liquidation. Such, however, was not absolutely a necessary result, as it still had its place of business, its lease and book accounts, and, if the stock which it received for its property was worth par, it had sufficient means with which to prosecute its

business. So that, whatever might have been the intent, it does not appear from this record that it had placed itself in such position that it could not prosecute its business and perform all of its corporate functions. And there is no proof that it was insolvent, or that the stock of the defendant corporation which it held was not worth par. So far as shown, bearing upon that question, it appears that the defendant had a paid-up capital in machinery and cash of $50,000. It had no debts, and there is nothing to show that it was not an absolutely solvent, going concern, and, so far as it appears, none of the incorporators or stockholders had any knowledge of plaintiff's claim except Rowe. The mere fact that a corporation intends to retire from business, and makes sale of all its corporate property, taking in payment therefor the stock of another corporation, does not render the transaction illegal. Holmes & Griggs Mfg. Co. v. Holmes & Wessell Metal Co., 127 N. Y. 252, 27 N. E. 831. In every case of this kind the question is of bona fides upon the part of the purchaser and seller. The fact that the selling corporation retains some of its property, and possibly may be able to continue its business, is not the test. It may retain some of its property after such sale, and still be guilty of the grossest fraud. It may part with its entire property, acting in good faith, and selling for value, and both purchaser and seller be protected therein, as being in the exercise of a legal act. Cole v. Iron Co., 133 N. Y. 164, 30 N. E. 847. So far as the case of Hibernia Ins. Co. v. St. Louis & N. O. Transp. Co. (C. C.) 13 Fed. 516, carries the rule further, it is not in harmony with the decision of the court of appeals.

In the present case, as we have before observed, there was no proof that either the old corporation or the new company were insolvent. If the sale had been for cash, and it had been paid over and distributed among the stockholders, we apprehend that no court would hold such sale invalid, and impress the property with a trust for the payment of a creditor whose claim was yet to be established in the hands of the purchaser. Upon the present state of proof, it does not appear but that the stock was the equivalent of cash. If it was in fact worth par, we think it would establish the validity of the transaction, as there can be no legal distinction between a cash sale and its equivalent in value. If this stock is of only nominal value, or so far below par value that it may be seen that an equivalent in value was not given for the property, it is clear that the transaction could not resist the attack of a creditor.

It is said, however, that the proof is conclusive as to fraud, for the reason that the certificate was given to Margaret H. Rowe, instead of her husband, as the treasurer. If this was mistakenly done, and subsequently corrected, and no one was prejudiced by the act, we should not think that it invalidated a previously valid act. No one suffered by it, as the stock was subsequently transferred to the treasurer, and thereafter it was divided among the stockholders, as the resolution provided. Margaret H. Rowe was the principal shareholder of the stock, and eventually received the most of the stock. The attorney who attended at the stockholders' meeting, and drew the resolution of the stockholders, testified that, in examining the

stock book of the defendant, he discovered the mistake, and procured it to be corrected. This action had not then been commenced. Indeed, the action of Mrs. Hall to enforce her claim had but just begun, and it was not till some two years afterwards that she obtained her judgment. There is nothing to cast discredit upon the statement of the attorney, nor any sufficient basis upon which fraud may be predicated of this act.

It is insisted that the old company is insolvent, for the reason that the receiver can obtain no property. There is not a scintilla of evidence that the receiver has ever tried to obtain any. Confessedly, there were the book accounts and the lease. What effort there was to reduce them to possession does not appear. He has ample remedy to pursue the stock, which was received for the property, in the hands of the stockholders. It may be that the plaintiff can show that the stock was not a sufficient consideration for the property. If he does, we see no reason why he is not entitled to relief, even though the old company retained some property after the sale. Upon the present proof, however, it appears that the transaction was for full value, and, if this be conceded, the mere fact that it was nearly all of the property of the corporation is not sufficient to invalidate the sale, in the absence of proof of actual fraud. These views lead to a reversal of the judgment, with costs to appellant to abide the final award of costs.

Judgment reversed, and a new trial ordered, with costs to appellant to abide the event.

VAN BRUNT, P. J., and INGRAHAM, J., concur.

RUMSEY, J. (dissenting). I think this judgment should be affirmed. I do not see how, upon the facts found by the learned justice at the special term, and which were clearly warranted by the evidence, the case can be distinguished from the case of Cole v. Iron Co., 133 N. Y. 164, 30 N. E. 847. It is undisputed that the sale by the Commercial Steam-Laundry Company to the defendant was made with the intent to close out the business of that company. The defendant purchased all the plant. It took over all the customers and business of the Commercial Company, and left nothing except a few books and accounts, the value of which nowhere appears, but which it is quite evident was not sufficient to pay the debts of the company of which the plaintiff was receiver. For this transfer, the necessary effect of which was to put it out of the power of the Commercial Company to do any other business or to pay its debts, the defendant gave to the Commercial Company no consideration whatever. It agreed to issue to that company $20,000 of the par value of its stock. Had that been done, so that, as a result of this transfer, the Commercial Company had become the owner of the stock, which possibly might have been worth enough to pay its debts, it is quite likely that this transfer could not be attacked. But it was not done. No stock was issued whatever to any officer of the Commercial Company, but the payment was made to a person who, not only had no official connection with the company as an officer, but against whom a creditor

of that company could only recover by an action to set aside the transfer. The effect was that the creditors of the Commercial Company were deprived of an opportunity to resort to the property of that company to pay their debts. This was done not only with the consent, but with the active co-operation, of the defendant. There can be no doubt that such a transfer would operate, just as it did operate, to defraud the creditors of the Commercial Company out of their debts. I see no reason why the defendant, which not only permitted this to be done, but took an active part in it, should not be held liable for the result of its action.

For this reason, I think the judgment should be affirmed.