

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Claude Isbell
Secretary of State
Austin, Texas

Attention:  J. L. McGarity

Dear Sir:

Opinion No. 0-6179
Re:  Can the Secretary of State
approve and file a charter
for a domestic corporation
where all of the qualify-
ing shares of the capital
stock has been subscribed
and paid for by a foreign
corporation with a permit
to do business in Texas,
where the purposes for
which each corporation is
organized is the same?
And related questions.

We are in receipt of your letter of recent date re-
questing the opinion of this department on the above stated
matters.  We quote from your letter as follows:

"Franklin Stores Corporation is a Delaware
corporation with a permit to do business in Texas.
This permit was originally obtained from this
office on July 1, 1935, at which time it did
business under the corporate name of Frank Ruben-
stein Stores Corporation.  This permit has since
been renewed for an additional period of ten
years.  I am attaching hereto a copy of the
complete file relative to the original permit
of this said corporation for your use in con-
sidering the questions that I will later present
you with.  This corporation under this permit
owns and operates a number of retail stores
where they sell ladies' and children's ready-
to-wear merchandise.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Claude Isbell, Page 2

"Franklin Stores Corporation of Sherman, is a domestic corporation whose charter was filed in this office on May 28, 1945. I am attaching hereto a copy of this charter together with the affidavit filed in support thereto.

"The attornies for the Delaware corporation have asked us if we will approve and file some forty or fifty additional charters identical with that of Franklin Stores Corporation of Sherman, except that a different town in Texas will be named in each corporate name, and except with the provision that in the affidavit accompanying each charter all of the capital stock of the proposed corporations will be subscribed and paid for by Franklin Stores Corporation, a Delaware corporation with a permit to do business in Texas.

"QUESTION: Can the Secretary of State approve and file a charter for a domestic corporation where all of the qualifying shares of the capital stock of such proposed corporation has been subscribed and paid for by a foreign corporation with a permit to do business in Texas, where the purpose for which each corporation is organized is the same?

"Would your answer to question 1 be different if the purpose for which the Texas corporation is organized was not the same as the subscribing corporation?

"Would your answer to question 1 be any different if the subscribing corporation did not have a permit to do business in Texas?

"Would your answer to question 2 be any different if the subscribing corporation did not have a permit to do business in Texas?"

1. With reference to your question as to whether the Secretary of State should "approve and file a charter for a domestic corporation where all of the qualifying shares of the capital stock of such proposed corporation has been sub-

Honorable Claude Isbell, Page 3

scribed and paid for by a foreign corporation with a permit to do business in Texas, where the purpose for which each corporation is organized is the same," under the law of comity, a foreign corporation with a permit to do business in Texas may exercise no greater powers than the local laws and public policy of this state allow to similar domestic corporations. (See Hildebrand, Foreign Corporations, Vol. 4, Sec. 1080, pp. 24-25). As to the general nature of the powers of a corporation, in the case of Rue v. Missouri Pacific Ry. Co., 8 S. W. 533, 74 Tex. 474, the court said:

"Natural persons may make any contract or perform any act not prohibited by law, while artificial persons (corporations) can do only those things which, by express grant or necessary implication, they are authorized or empowered to do by the laws of the state under which their charters were obtained."

The courts have generally held that the powers of a foreign corporation depend not only upon the limitations of its charter, but also upon the law of the state in which said powers are exercised. (Hildebrand, Texas Corporations, Vol. 1, Sec. 1080, pp. 24-25; Fowler v. Bell, 37 S. W. 1058, 90 Tex. 150). With reference to the powers of a foreign corporation, when such foreign corporation complies with the Texas law and obtains a permit, under the provisions of Article 1532, Vernon's Annotated Civil Statutes, it "shall have and enjoy all the rights and privileges conferred by the laws of this state on corporations organized under the laws of this state."

With reference to the limitations and prohibitions upon the powers to be exercised by domestic or foreign corporations doing business in this state, we note that Art. 1349, V. A. C. S., provides:

"No corporation, domestic or foreign, doing business in this State, shall employ or use its stock, means, assets or other property, directly or indirectly for any purpose whatever other than to accomplish the legitimate business of its creation, or those purposes otherwise permitted by law; provided that nothing in this Article shall be held to inhibit corporations from contributing to any bona fide association, incorporated or unincorporated, organized for purely

Honorable Claude Isbell, Page 4

religious, charitable or eleemosynary activities, or to commercial or industrial clubs or associations or other civic enterprises or organizations not in any manner nor to any extent directly or indirectly engaged in furthering the cause of any political party, or aiding in the election or defeat of any candidate for office, or aiding in defraying the expenses of any political campaign, or political headquarters, or aiding or assisting the success or defeat of any question to be voted upon by the qualified voters of this State or any subdivision thereof."

By the great weight of authority, a corporation cannot subscribe for stock in a newly formed corporation. (Hildebrand, Texas Corporations, Vol. 1, Sec. 31, pp. 168-169; Denny Hotel Co. vs. Schram, 32 P. 1002, 6 Wash. 134) "The prevailing doctrine is that a corporation has no power either to subscribe for or purchase shares of stock in another corporation, unless such power is expressly conferred upon it by its charter or other statute, or unless the circumstances are such that the transaction is a necessary or reasonable means of carrying out or accomplishing the objects for which it was created. Moreover, purchases of stock of other corporations have been held to be contrary to public policy, in addition to being beyond the power of the corporation," Fletcher, Cyclopedia Corporations, Vol. 2, Sec. 1117, p. 2067.

Under the provisions of Article 1349, a foreign or domestic corporation doing business in this State would be permitted to subscribe for and acquire capital stock in a domestic corporation where such domestic corporation constitutes a "civic enterprise" (See McCord Co. v. Citizens Hotel Co., (Tex. Civ. App.) 287 S. W. 906, (error dismissed for want of jurisdiction); Adams National Bank v. Adams Co., 298 S. W. 309 (writ dismissed); A. J. Anderson Co. v. Citizens Hotel Co., Tex. Civ. App., 8 S. W. (2d) 702, (writ refused); and A. J. Anderson Co. v. Kinsolving, (Tex. Civ. App.) 262 S. W. 150, writ of error dismissed for want of jurisdiction), or for the benefit of certain charitable, religious or eleemosynary activities or industrial clubs or associations. Under said article, such corporations may acquire stock in another corporation "to accomplish the legitimate business of its

Onorable Claude Isbell, Page 5

creation," and the power to acquire such stock is implied, if such acquisition is a reasonable or necessary means of effectuating the corporate object; thus, a corporation may take stock in satisfaction of a debt (Holmes & Griggs Mfg. Co. v. Holmes & Wessel Metal $Co.$, 27 N. E. 831, 127 N. Y. 252), as collateral security for an existing debt (Citizens State Bank of Noblesville v. Hawkins, C. C. A., Ind., 71 F. 369), or in satisfaction of a disputed claim (First National Bank of Charlotte v. National Exchange Bank of Baltimore, 92 U. S. 122, 23 L. Ed. 679). It is apparent that the subscription for the capital stock of a domestic corporation by another corporation, under the facts stated, does not constitute any of the foregoing purposes. Also, the power to "acquire" stock in another company is to be distinguished from power to be a "purchaser" or "subscriber" of capital stock in another corporation, and statutory power to "acquire" stock in another corporation does not carry with it the power to subscribe for new stock in another company. (Robotham v. Prudential Ins. Co., 64 N. J. Eq. 673, 53 Atl. 842.) It is well settled that, except where it is otherwise provided by statute, a corporation cannot become an original subscriber for stock in another corporation. (See Fletcher, Cyclopedia Corporations, Vol. 2, Sec. 1119, p. 2071, and cases cited therein). A mere benefit to the purchaser does not make the purchase lawful. (Rowan v. Texas Orchard Development Co., (Tex. Civ. App.) 181 S. W. 871 (writ denied)). We are unable to find any statutory authority, expressed or implied, whereby such subscription for the original capital stock of a domestic corporation by a foreign corporation doing business in Texas would be within the "purposes otherwise permitted by law" referred to in Article 1349. Although the purposes of the subscribing foreign corporation and the proposed domestic corporation are the same, insofar as the lack of power of a corporation to purchase shares of stock in another company is concerned, it is immaterial that the corporations are engaged in similar business. (People v. Chicago Gas Trust Co., 130 Ill. 268, 8 L. R. A. 497, 22 N. E. 798; Buckeye Marble & Freestone Co. v. Harvey 92 Tenn. 115, 20 S. W. 427; Fletcher, Cyclopedia Corporations, Vol. 2, Section 1118, pp. 2070-2071)

In the absence of legislative sanction, either expressed or implied, and in view of the authorities cited herein, it is our opinion that a foreign corporation with a permit

Honorable Claude Isbell, Page 6

to do business in Texas would not be authorized to subscribe and pay for all the qualifying shares of stock of a proposed domestic corporation, and that the Secretary of State should not approve the charter of said proposed domestic corporation.

2. In view of the reasons above given, our answers to Question 1 would be no different if the purposes of the subscribing foreign corporation and the proposed domestic corporation were different. The rule applicable to the purchase of stock by one corporation in another is the same, regardless of whether each corporation is created for the same or for different purposes. (Fletcher, Cyclopedia Corporations, Vol. 1, Sec. 1118, p. 2071).

3. Our answer to Question 1 would be no different if the subscribing foreign corporation did not have a permit to do business in Texas. The courts have generally held that a foreign corporation cannot exercise greater powers than the local laws allow to similar domestic corporations. (See Fletcher, Cyclopedia Corporations, Vol. 2, Sec. 1125, p. 2081). The limitations and prohibitions of Article 1349, V. A. C. S., apply to domestic corporations, and for the same reasons heretofore discussed in Question 1, it is our opinion that a domestic corporation would not be authorized,under the facts given, to subscribe for all of the capital stock in another domestic corporation.

In the case of Coler v. Tacoma Railway and Power Co., 65 N. J. Eq. 347, 103 Am. St. Rep., 786, 54 Atl. 413, the court of New Jersey held, in view of recognized principles of comity and public policy, that a New Jersey corporation could not own stock in a Washington corporation, when under the laws of Washington, a domestic corporation could not own stock in another domestic corporation, regardless of the powers of the foreign (N. J.) corporation in its own state. This case involved an arrangement by which the New Jersey Company (apparently without a permit to do business in Washington) was to transfer all its property and franchises, except the franchise of being a corporation, to a corporation in the State of Washington, and receive therefor twenty thousand shares of paid up stock in the latter company of the par value of one hundred dollars each, besides certain assumptions and guaranties. We quote from the opinion of the court as follows:

Honorable Claude Isbell, Page 7

"The courts of Washington have decided that one corporation cannot subscribe for, purchase, hold or vote upon the shares of stock of another corporation without legislative sanction, and that the legislature of the state has never sanctioned such acts: Denny Hotel Co. v. Schram, 6 Wash. 134, 36 Am. St. Rep. 130, 32 Pac. 1002; Parsons v. Tacoma Smelting etc. Co., 25 Wash. 492; 65 Pac. 765. This doctrine rests altogether on considerations of public policy. But it is said that the policy, so declared, extends only to domestic corporations, and whether it should embrace foreign corporations is a matter to be decided by the courts of that state alone. I do not understand that the policy is so restricted. One of its objects is to prevent one corporation from interfering with the control of another. This was the purpose to be subserved by the decision in Parsons v. Tacoma Smelting etc. Co., just cited, where although the title of the stockholding company was not assailed, its right to vote upon the stock was denied. It is true that the stockholding company was a domestic corporation, but the denial of its right to vote could not be based on that circumstance. The doctrine that it was impolitic to allow a corporation, whose chartered powers were subject to modification at the will of the state, to exercise control over a domestic corporation, would seem, necessarily, to imply that it was deemed equally impolitic to permit such control by a corporation whose chartered powers were generally independent of the state. The application of the restriction to a foreign corporation is a mere interpretation, not an extension, of the doctrine.

"But if it be an extension, the extension is made by the constitution of Washington, which provides (article 12, paragraph 7) that 'no corporation organized outside the limits of this state shall be allowed to transact business within the state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state.'

". . . . If this New Jersey corporation can legally do what is thus prohibited to a Washington corporation, then the foreign corporation is allowed to transact business in Washington on conditions more favorable than those prescribed for its domestic corporations. The constitution forbids this." (underscoring ours)

In view of the similarity of the situation in Texas and Washington, particularly with reference to the absence of legislative sanction for a domestic corporation (created for the purpose mentioned) to become an original subscriber for the capital stock in another domestic corporation (of this particular nature); in view of recognized public policy; and in view of the above cited authorities, it is our opinion that the Secretary of State should not approve and file a charter of a domestic corporation, where all of the qualifying shares of capital stock are subscribed and paid for by a corporation without a permit to do business in Texas.

4. In view of our holding that under the facts stated, a foreign corporation (without a permit to do business in Texas) would not be permitted to subscribe for all of the qualifying shares of capital stock of a domestic corporation, as heretofore stated, insofar as the lack of authority is concerned, it is immaterial whether the purposes of the foreign subscribing corporation and the proposed domestic corporation are the same or different. Therefore, our answer to Question 2 would be no different if the purposes of the foreign corporation (without a permit to do business in Texas) and the proposed domestic corporation were different.

We trust the foregoing satisfactorily answers your inquiries.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED JUN 19 1945

ATTORNEY GENERAL OF TEXAS

By _____
J. A. Ellis
Assistant

JAE:ddt


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN