## BOARD OF COM'RS OF KINGMAN COUNTY v. CORNELL UNIVERSITY.

(Circuit Court of Appeals, Eighth Circuit. July 10, 1893.)

### No. 234.

1. RAILROAD COMPANIES—MUNICIPAL AID—COUNTY BONDS—VALIDITY.
   A county, with general powers to lend its credit in aid of railroads, issued bonds in exchange for the stock of a railway company on condition that the company build a railway of standard gauge through the county, which condition was subsequently fulfilled. In making this issue, all formalities required by law were complied with. *Held*, that the county could not set up the defense of ultra vires, in an action on the bonds, merely because the railway company was authorized to build only a narrow-gauge railroad.

2. SAME—RECITALS—BONA FIDE HOLDER.
   County bonds bore on their face recitals that they were issued to a certain railway corporation in payment of a subscription for stock, made by virtue of a certain act of the state legislature, (cited by title and date,) and acts amendatory thereof; "the provisions and requirements of said acts, and the conditions precedent necessary to the subscription aforesaid, and the lawful issue of this bond, having been in all respects fully and completely complied with and performed." *Held*, that the defense of ultra vires was not available in an action on the bonds, as against a bona fide purchaser for value on the faith of the recitals, and without notice that the corporation was authorized to construct only a narrow-gauge road, and that the bonds were issued on condition that the road should be, as it in fact was, of standard gauge.

3. SAME—POWER OF COUNTIES UNDER KANSAS STATUTE.
   Act Kan. March 3, 1877, § 2, (1 Gen. St. Kan. 1889, pp. 456, 457,) empowered counties to issue bonds to aid in the construction of narrow-gauge railways to the amount of $4,000 per mile, and to exchange them for second mortgage bonds of such railways. Section 3 provided that the act should not be construed to repeal or change any then existing law authorizing counties to issue bonds in aid of railroads. Prior to the passage of this act, counties were empowered to issue bonds in aid of railways irrespective of the gauge, but could not make such issue in exchange for second mortgage bonds. *Held*, that the act of 1877 did not take away the pre-existing power of counties to issue bonds in aid of railways.

In Error to the Circuit Court of the United States for the District of Kansas.

At Law. Action by Cornell University against the board of commissioners of the county of Kingman, Kan., to recover upon certain railroad aid bonds of said county. Judgment was given for plaintiff. Defendants bring error. Affirmed.

Statement by Thayer, District Judge:

This is a suit on railroad aid bonds, which were issued on August 2, 1886, by Kingman county, Kan., to the amount of $125,000. The bonds contained the following recitals: "This bond is redeemable and payable after ten years, at the option of the board of county commissioners of said county, after twelve months' notice to the holder hereof; and is one of a series of one hundred and twenty-five bonds of like tenor, date, and amount, numbered from 1 to 125 inclusive, issued to the Denver, Memphis and Atlantic Railway, a corporation of the state of Kansas, in full payment of a subscription by the clerk of said Kingman county for and in behalf and in the name of said county of Kingman, for two hundred and fifty shares, of five hundred dollars each, of the capital stock of said railway corporation; said subscription to stock, and issue of bonds in payment thereof, being made under and by virtue of authority conferred by a certain act of the legislature of the state of Kansas, entitled 'An act to enable counties, townships, and cities to aid in the construction of railroads, and repeal section eight of chapter thirty-nine, of the Laws of 1874,' approved February 25, 1876, and by the acts of the state legislature amendatory thereof and supplemental thereto, the provisions and requirements of said acts, and the conditions precedent necessary to the subscription aforesaid, and the lawful issue of this bond, having been in all respects fully and completely complied with and performed."

Laws that were in force in the state of Kansas at the time the bonds in suit were issued, and which are referred to in the bonds, empowered any organized county of the state of Kansas to subscribe to the capital stock of any railroad company constructing or proposing to construct a railroad through or into the county, and to issue bonds in payment for the stock so subscribed, provided that two-fifths of the resident taxpayers of the county first petitioned the board of county commissioners to call an election to determine if aid in such form should be extended, and provided, further, that at such election two-thirds of the votes cast were in favor of granting such aid.

The Denver, Memphis & Atlantic Railway, in whose favor the bonds in suit were issued first filed articles of incorporation under the general incorporation laws of the state of Kansas relative to the formation of railway corporations on October 11, 1883. In the original articles of incorporation the company was styled, "The Denver, Memphis & Atlantic Narrow-Gauge Railway," and the articles stated that it was organized, "to construct and operate a narrow-gauge railway and telegraph line between the cities of Denver, Colorado, and Memphis, Tennessee." On November 12, 1884, the stockholders of said company, by a resolution duly adopted, changed the name of the company to "The Denver, Memphis & Atlantic Railway," and a copy of such resolution was filed with the secretary of state for the state of Kansas on November 17, 1884.

On March 11, 1885, the requisite number of taxpayers of Kingman county (to wit, two-fifths) petitioned the county commissioners to call an election to vote upon a proposition that the county subscribe for 250 shares of the capital stock of the Denver, Memphis & Atlantic Railway, and in payment therefor issue bonds of the county to the amount of $125,000. The conditions contained in the proposition were as follows: "That the aforesaid Denver, Memphis & Atlantic Railway Company shall construct a good substantial railroad of standard gauge, with steel rails, and fully equipped to handle all business offered, and shall enter said Kingman county near the southeast corner, and run northwesterly via the city of Kingman through said county, and leave it near the northwest corner, with a freight and passenger depot and side tracks for the convenient handling of freight, within half a mile of the intersection of Maine and Sherman streets in said city of Kingman, and at such other points along the line of said railway in said county as will accommodate the shipping interests adjacent and tributary thereto. The aforesaid railway company shall commence work on their line of railway within nine months, and shall have it completed and in operation by lease or otherwise, to furnish a competing line to the city of Kingman, within eighteen months from the date of this election and through the county within two years from said date."

At an election duly called and advertised and held on April 14, 1885, the proposition aforesaid was accepted by the requisite majority of two-thirds of the votes cast, and thereafter the railroad was duly completed and put in operation in accordance with the terms of the proposition. The bonds were delivered to the railway company some days subsequent to August 2, 1886, and thereafter, for some three years, the county paid the interest thereon as it accrued.

At a meeting of the stockholders of the aforesaid railway company held on January 20, 1886, amended articles of incorporation were adopted, which were on February 2, 1886, filed in the office of the secretary of state for the state of Kansas. Such amended articles appear to have been adopted to remove all doubt of the company's right to construct a standard-guage road, instead of a narrow-gauge road, as at first contemplated. In the amended articles of incorporation, the clause in the original articles relative to constructing a narrow-gauge road was omitted, and in lieu thereof it was stated that the road proposed to be built, and then being built, was a standard-gauge railroad. It was further recited in the articles that such change in the plan of construction had been authorized by a resolution of the stockholders at a meeting held by them on September 26, 1885, and that since the latter date the company had been engaged in building a standard-gauge railroad on the route as originally laid out.

An act passed by the legislature of the state of Kansas on February 3, 1886, entitled "An act in relation to railway corporations, and authorizing and confirming change of gauge in certain cases, and municipal aid in such cases," (1 Gen. St. Kan. 1889, p. 478,) contains the following provision, among others: "Sec. 3. If before the passage of this act any such railway corporation by vote of its stockholders shall have changed the gauge of its track from narrow gauge to standard gauge, and shall within sixty days after the passage of this act, by its secretary and under its corporate seal, certify to the secretary of state the form of such change and the date thereof, such change is hereby ratified and affirmed, and shall have the same force and effect as if made after the passage of this act."

Pursuant to the foregoing section of said act, the secretary of the Denver, Memphis & Atlantic Railway on February 8, 1886, filed with the secretary of state a certificate showing that on September 26, 1885, the gauge of that company's road had been changed from a narrow to a standard gauge by a vote of its stockholders.

By an act passed by the legislature of the state of Kansas on March 3, 1877, (1 Gen. St. Kan. 1889, pp. 456, 457,) it was provided, in substance, in the first section, that any railroad duly organized for the purpose of building a narrow-gauge railroad might issue bonds to the amount of · $10,000 per mile, $6,000 thereof per mile to be first mortgage bonds, and the residue to be second mortgage bonds. By the second section, counties, cities, and towns in that state were authorized to issue bonds in aid of the construction of such narrow-gauge roads to the amount of $4,000 per mile, and to exchange them for the second mortgage bonds of the railway company. By the third section of the act it was declared that the act should not be construed as repealing or changing any then existing law of the state of Kansas authorizing counties to issue bonds in aid of building railroads.

As a defense to the present suit the county pleaded, in substance, that the bonds sued upon were issued without authority of law, and were therefore void, even in the hands of an innocent purchaser for value; and it relied upon the various laws of the state, and the proceedings heretofore recited, to substantiate such defense. The circuit court overruled the defense, and entered judgment against the county, whereupon it sued out a writ of error.

S. S. Ashbaugh, and Samuel R. Peters, (J. W. Ady and J. C. Nicholson, on the brief,) for plaintiff in error.

W. H. Rossington, Charles Blood Smith, E. J. Dallas, and R. T. Herrick, for defendant in error.

Before SANBORN, Circuit Judge, and SHIRAS and THAYER, District Judges.

THAYER, District Judge, after stating the case as above, delivered the opinion of the court.

To make good the defense that these bonds are void even in the hands of an innocent purchaser for value, the county endeavors to establish, and must establish, the following propositions:

First. That the Denver, Memphis, & Atlantic Railway only had authority to construct and operate a narrow-gauge railroad, when the proposition to take stock in that company, and to issue bonds therefor, was proposed to, and was accepted by, Kingman county.

Second. That after the passage of the act of March 3, 1877, relative to granting aid to narrow-gauge railroads, such roads could only be aided by counties and municipalities of the state of Kansas, in the mode prescribed by that act,—that is to say, by exchanging county bonds for second mortgage bonds of the railroad at the rate of $4,000 per mile.

Third. That the so-called curative act of February 3, 1886, authorizing and confirming a change of gauge in certain cases, contravenes the constitution of the state of Kansas, and is therefore void and of no effect.

And finally the county must maintain that, in view of the foregoing propositions, there was such an utter want of power to issue the bonds in controversy that the county is not estopped from denying their validity in a suit by an innocent purchaser for value.

As the last of these propositions is, in our judgment, the most important, we shall first consider it. It will be observed that from the standpoint occupied by the county—that is to say, admitting all of its premises—the sole defect in the bonds is the supposed want of power in the Denver, Memphis & Atlantic Railway to construct and operate a standard-gauge railroad at the time it undertook such construction, and at the time the bonds were voted by the inhabitants of the county. In no other respect does it appear that there was any such want of power attending the issuance of the bonds as will serve to render them void. It is not questioned that the county had ample authority, under the laws of the state, to aid in the construction of standard-gauge roads by taking stock in railroad companies which proposed to construct such roads through or into the county, and to issue its bonds in payment for such stock subscription; and it is not denied that the road proposed to be built by the railway company, when the bonds in suit were voted, was a standard-gauge road, and that such a road was actually built, and has been in operation through the county for the past seven years. Fairly stated, therefore, the defense interposed by the county is simply this: that it entered into a contract with the railway company to build a particular kind of road, which the company did not at the time have the charter authority to construct, and that the bonds which it issued and delivered are utterly void, notwithstanding the fact that the road has been built in exact compliance with the terms of the contract, and notwithstanding the fact that the county had a general power to issue bonds in aid of the construction of such a road as it bargained for, and has in fact received.

In view of the authorities, we feel justified in holding that, without reference to the recitals, the county is not at liberty at this time to plead as a defense to the bonds that the railway company exceeded its powers in constructing a standard-gauge road. The position occupied by the county is very different from what it would be, if it had agreed to issue the bonds in payment for stock, on condition that the railway company would build a narrow-gauge road, and if such a road had in fact been built. In that event it might be plausibly argued that the bonds were utterly void because the county had undertaken to aid in building a narrow-gauge road in a manner not authorized by law; but that argument is not tenable, on the facts disclosed by the present record, for the reason that the road constructed was of standard gauge, and aid was extended to the enterprise in the very manner contemplated by the statute. The want of power alleged is not a want of power in the county to aid in the work that was actually undertaken, or in the mode of granting such aid, but is merely a want of power in the railway company to construct a standard-gauge road. Furthermore, the act of the railway company in undertaking to build a standard-gauge road, was simply in excess of its charter powers, and was not otherwise contrary to law or illegal, and the contract between the county and the railway company is now fully executed. On the one hand, the road has been built, and the stock has been delivered, and, on the other, the bonds of the county have been issued, and have passed into the hands of innocent third parties. We repeat, then, that, in view of all the circumstances, we feel justified in holding that the county is not at liberty at this time to interpose the plea of ultra vires as a defense to the bonds. The general doctrine is that where a contract or undertaking which has been entered into by a corporation is simply in excess of its charter powers, and the same has been fully executed, the defense of ultra vires cannot be successfully pleaded in a suit to enforce negotiable securities or other obligations which have issued out of the original transaction. In such cases the state is entitled to restrain the offending corporation from exercising powers that do not belong to it, or to oust it of its franchises, in a proper proceeding brought for that purpose, but it is ordinarily held that in collateral suits between private litigants the plea of ultra vires is not available as a defense. Bank v. North, 4 Johns. Ch. 370; Bank v. Matthews, 98 U. S. 621; Gold Min. Co. v. National Bank, 96 U. S. 640; Whitney Arms Co. v. Barlow, 63 N. Y. 62; Bradley v. Ballard, 55 Ill. 417; Ditch Co. v. Zellerbach, 37 Cal. 543; Argenti v. City of San Francisco, 16 Cal. 255; Allegheny City v. McClurkan, 14 Pa. St. 81; Wood's Field, Corp. §§ 230–235.

But we do not find it necessary, in this case, to rest our decision solely on the ground last indicated. The bonds in controversy are now held by a corporation which purchased them for value on the faith of their recitals, and without any actual notice of the matter relied upon as a defense, i. e. that the original articles of association of the Denver, Memphis & Atlantic Railway declared that the

company intended to construct and operate a narrow-gauge railroad. The bonds do not show on their face that the railway company is a narrow-gauge road, or that it was organized to build a road of that character. Under the laws of Kansas, all railroad corporations are organized under, and pursuant to the same law relative to corporate organization, and the statute in question does not, in terms, require a railroad corporation to state in its articles of association whether its track is to be of a standard or of a narrow gauge. Furthermore, the bonds contain recitals showing that they were issued under laws existing in the state of Kansas, which conferred upon the county ample power to issue bonds for the purpose for which they purport to have been issued. In the case of County of Macon v. Shores, 97 U. S. 272, it appeared that county aid had been granted to a railroad company in the form of a stock subscription and by an issuance of bonds, although the company had not accepted its charter and become organized as a corporation within the time limited by law for such acceptance of the charter, and for organization thereunder. In a suit against the county upon the bonds, it was held that a plea that the company had not become organized within the time limited by law constituted no defense, as against an innocent purchaser of the securities. The same ruling was repeated in the case of County of Ralls v. Douglass, 105 U. S. 728, and in the latter case it was also held, that it was not competent for the county to show by way of defense, as against an innocent purchaser of its bonds, that when they were executed a person was acting as presiding judge of its county court who was not de jure a member of the court. It seems to be settled by these decisions that a purchaser for value of railroad aid bonds is not required to ascertain and to determine, at his peril, whether the railway corporation to whom they were voted and issued was at the time duly and regularly constituted; and, within this rule, we think that it may be safely affirmed that a purchaser of the bonds in suit was under no obligation to ascertain if the railway corporation to whom they were voted had the requisite charter authority to construct a standard-gauge road. That was a matter which did not so affect the power of the county to issue the bonds, as to make it the duty of the bondholder to institute inquiries. We hold, therefore, that, as there was nothing on the face of the bonds to indicate that the Denver, Memphis & Atlantic Railway was only authorized to construct a narrow-gauge railroad, a purchaser of the bonds was not affected with notice of that fact, and, furthermore, that the county is estopped from pleading such fact as a defense, in view of the recital, that everything had been "complied with and performed," which was "necessary * * * to the lawful issue of the bonds."

And, finally, we are not able to assent to the second proposition of counsel, which is stated at the beginning of this opinion, that the act of March 3, 1877, deprived counties of the state of Kansas of the power to aid in the construction of narrow-gauge roads otherwise than by exchanging municipal bonds for second mortgage

railroad bonds at the rate of $4,000 per mile. It admits of no doubt, we think, that prior to the passage of that act no distinction was made in that state between railroads of a standard and narrow gauge. They were organized then, as now, under the same law, and prior to March 3, 1877, undoubtedly possessed the same powers, franchises, and privileges, including the right to receive county aid in the form of a stock subscription or a loan of credit. But prior to March 3, 1877, counties in that state could not exchange their own bonds for second mortgage railroad bonds. That was a new feature added to the railway legislation of that state, and it was only made applicable to companies proposing to build narrow-gauge roads, and was most likely added with a view of holding out special inducements for their construction. We have not been able to discover anything in the provisions of the act in question which evidences an intention on the part of the legislature to withdraw from counties or other municipalities the power which they previously possessed to extend aid to narrow-gauge roads, but, on the contrary, the concluding section of the act of March 3, 1877, expressly declares that it shall not be construed "as repealing or changing any provision of any law of the state * * * authorizing counties * * * to issue bonds to aid in building railroads." Our conclusion is, therefore, that the act of March 3, 1877, is cumulative in its character, and that it enlarges the previous power of counties in the state of Kansas to aid in the construction of narrow-gauge roads.

The view which we have thus taken of the several questions already considered is decisive of the case, and renders it unnecessary to consider the other propositions, heretofore cited, which have been discussed by counsel. The judgment of the circuit court is manifestly for the right party, and it is hereby affirmed.