METCALF v. AMERICAN SCHOOL FURNITURE CO. et al.

(Circuit Court, W. D. New York. March 7, 1903.)

No. 13.

1. EQUITY—PLEA—SETTING DOWN FOR HEARING.
Where a plea has been set down for argument by complainant, the facts stated therein must be taken as true.

2. CORPORATIONS—ACTION BY STOCKHOLDER.
Where the action of a corporation in making a transfer of all of its property was illegal, and it is under the control of the directors who made such transfer, a stockholder may maintain a suit on behalf of the corporation to set aside the transfer.

3. SAME—POWERS—SALE OF ALL ITS PROPERTY.
A corporation organized under the laws of West Virginia has power, under Code W. Va. 1899, c. 53, § 56, to sell and transfer all of its property and discontinue its business by the action of the holders of a majority of the stock, taken at a general stockholders' meeting.

4. SAME—RATIFICATION OF UNAUTHORIZED SALE.
Where a corporation has power to transfer all of its property by a vote of a majority of its stock, such a transfer, made by its directors without actual fraud, may be validated by a subsequent ratification by the stockholders.

5. SAME—RIGHTS OF MINORITY STOCKHOLDERS—EFFECT OF STATUTE.
Where the charter and by-laws of a corporation and the statutes of the state under which it is organized, vest in a majority of the stockholders the right to sell the property of the corporation and to discontinue its corporate existence, every stockholder takes his stock subject to such right; and a minority stockholder must submit to the action of the majority in exercising such power, in the absence of fraud.

6. SAME—VALIDITY OF SALE—COMBINATION IN RESTRAINT OF TRADE.
The sale and transfer by a corporation of its property and good will to another corporation, where such sale was within its powers, cannot be repudiated on the ground that the purchaser acquired the property for the purpose of obtaining a monopoly of the business, and in pursuance of an illegal combination in restraint of trade.

---

¶ 6. Validity of monopolistic contracts as affected by public policy, see note to Cravens v. Carter-Crume Co., 34 C. C. A. 486.

**7. SAME—SECRET PROFIT OBTAINED BY DIRECTORS.**

The fact that directors of a corporation, on making a sale of its property, by a secret agreement with the purchaser, obtained for themselves a portion of the consideration paid for the property, does not afford ground for a rescission of the sale at suit of the corporation or a stockholder; the remedy being by suit against the directors for an accounting.

**8. SAME—RESCISSION—EXECUTED CONTRACT.**

A contract by a corporation for the sale of its property cannot be rescinded by the corporation, or at suit of a stockholder suing in its right, on the ground that it was ultra vires, where it has been fully executed by a transfer of the property and the receipt of the price.

**9. SAME—PAYMENT FOR PROPERTY SOLD—ACCEPTANCE OF STOCK IN ANOTHER CORPORATION.**

Where a corporation is given by its charter the right to dispose of its property and to discontinue its corporate existence, it has the power to accept stock in another corporation in payment of the purchase price of its property, provided the transaction is bona fide.

**10. SAME—CONSTRUCTION OF STATUTE.**

The provisions of Code W. Va. 1899, c. 52, §§ 3, 4, which prohibit the purchase of stocks, bonds, or securities by a corporation, except when taken in payment of a debt, or as security therefor, apply only while the corporation is a going concern, engaged in carrying on the business for which it was created.

In Equity. On demurrers and pleas.

Seymour, Seymour & Harmon, for complainant.

Davies, Stone & Auerbach (Brainard Tolles, of counsel), for defendants American School Furniture Co., Oakman, and Turnbull.

Cox, Kernan & Kimball (Maulsby Kimball, of counsel), for defendants Buffalo School Furniture Co. et al.

HAZEL, District Judge. This cause was heretofore considered by this court (108 Fed. 909), and the demurrers then interposed were sustained on the ground of multifariousness. In the former bill of complaint, relief was sought in equity by complainant as a minority stockholder, suing for herself and in behalf of other stockholders of defendant Buffalo School Furniture Company, and to recover treble damages, under the anti-trust act of July 2, 1890 (26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]). It was held that such damages were only recoverable in an action at law by the complainant, and inured to her sole benefit, while the equitable relief sought by the bill was for the benefit of the corporation in whose behalf the suit was brought, and therefore inconsistent remedies were averred in the bill. The order sustaining the demurrers to the original bill recites that they are sustained solely and only upon the ground of multifariousness, although the precise questions here involved were also then considered. The opinion of the court, however, merely indicated an impression that the bill, with the inferences deduced therefrom, sufficiently averred a conspiracy in restraint of trade and commerce to enable the complainant to give evidence upon the trial in support of the charge. Subsequently the parties appeared before the court in settlement of the terms of the order, with the result that the restrictive order sustaining the demurrer because of multifariousness, only, was entered. On appeal the Circuit Court of Appeals affirmed the de-

cree of the Circuit Court, with leave to amend the bill. 113 Fed. 1020. The precise questions now considered not having been determined on the former hearing, as appears by the order sustaining the demurrer because of multifariousness, the contention of the complainant that the defendants' demurrers were overruled upon every other ground therein stated cannot be maintained. The amended bill which is now before me has eliminated the demand for treble damages, but in all other respects the relief demanded is practically similar to that of the original bill. All the defendants, except Oakman and Turnbull, have demurred to part, answered to part, and all the defendants have filed pleas in bar to part of the bill now considered.

The grounds of demurrers may be subdivided and briefly summarized into four general grounds, as follows: (1) Want of equity; (2) complainant has no legal capacity to sue; (3) that the cause assigned for equitable relief does not entitle complainant to the character of the relief prayed for; (4) defect of parties plaintiff or defendant, in that there are interested stockholders, without whose presence relief ought not to be granted. The pleas are supported by the answers, which deny the existence of the conspiracy so alleged in the bill. This appears to be in compliance with equity rule 32. The plea of the American School Furniture Company, a New Jersey corporation, hereinafter referred to as the American Company, and of the Buffalo School Furniture Company, hereinafter referred to as the Buffalo Company, substantially allege that the deed of conveyance by the latter company to the former was made authoritatively and pursuant to a majority meeting of the stockholders held at Buffalo, N. Y., on January 17, 1900, at which meeting a resolution was adopted by holders of upwards of two-thirds of the capital stock, ratifying the transfer of property to the American Company. The plea of the individual defendants, hereinafter referred to as the directors, in addition to the matters stated in the plea of both corporations, alleges that at such meeting, ratifying the transfer of property by the Buffalo Company to the American Company, a resolution was adopted discontinuing the business of the corporation, and dividing the property and assets that should remain after paying the liabilities. The plea of the defendants Oakman and Turnbull alleges that they are trustees of a mortgage made by the defendant American Company subsequent to the transfer to it by the Buffalo Company, and covering that property, and that the bondholders whose interests are represented by them loaned their money in good faith and for value, without notice or knowledge of any of the matters charged in the bill.

The argument has proceeded on the theory that the entire case is sufficiently shown by the pleadings, and that nothing more definite would be disclosed on the hearing. The complainant having brought the plea on for argument, the facts therein stated must be considered as true. State of Rhode Island & Prov. Plantations v. State of Mass., 14 Pet. 210, 10 L. Ed. 423; 1 Dan. Ch. Pl. & Pr. (4th Ed.) 696; U. S. v. Dalles Military Rd. Co., 140 U. S. 599, 11 Sup. Ct. 988, 35 L. Ed. 560; Hatch v. Bancroft-Thompson Co. (C. C.) 67 Fed. 802; 1 Garland & Ralston, 272. It is indisputable that, if a right to equitable relief arises from the averments of the bill, a remedy for the

alleged wrong may be invoked by the corporation in whose behalf the action is brought. If, therefore, complainant by her bill prima facie discloses the violation of a legal or equitable right, and hence a wrong done by the defendants, the American Company and the Buffalo directors, to the injury of the Buffalo Company, this court, sitting in equity, is empowered to redress such wrongful acts, provided no adequate remedy exists at law. Whenever a corporation, under such circumstances, refuses to avail itself of the machinery provided by law to enforce such right, a stockholder, in behalf of the recalcitrant corporation, may invoke legal redress. This is especially the case when the corporation is under the control of parties intrusted by its shareholders with the responsibility of righteous management. Hawes v. City of Oakland, 104 U. S. 450, 26 L. Ed. 827; Davenport v. Dows, 18 Wall. 626, 21 L. Ed. 938; U. S. Supreme Court Rule 94. Has such a wrong been committed against the Buffalo Company, of which complainant and her associates in whose behalf the suit is brought are minority stockholders? Can the complainant invoke an equitable remedy in this court?

At the outset, complainant's contention that the sale by the directors to the American Company pursuant to resolution adopted at a regular meeting of the stockholders is ultra vires must be held unsound. The question as to whether the majority stockholders possess the power to direct a transfer of the property of the corporation to the American Company will first be considered. The Code of West Virginia of 1899 (chapter 53, § 56), under the laws of which state the Buffalo Company was organized, provides:

"The stockholders may at any time in general meeting resolve to discontinue the business of the corporation, the majority of the capital stock being present and voted in favor of such discontinuance; and may divide the property and assets that may remain after paying all debts and liabilities of the corporation. * * * As soon as practicable, after such resolution is passed, the stockholders shall cause ample funds and assets to be set apart, either in the hands of the trustees or otherwise, to secure the payment of all debts and liabilities of the corporation."

By section 59 of the same chapter it is provided that:

"When a corporation shall expire or be dissolved its property and assets shall * * * be subject to the payment of the liabilities of the corporation, and the expenses of winding up its affairs; and the surplus, if any, then remaining, to distribution among the stockholders according to their respective interests."

This court will take judicial notice of this statute. It substantially appears by the pleadings that, of the 3,500 shares of stock of the Buffalo Company, 2,870 shares, excluding complainant's 560 shares, those of George P. Cary, 60 shares, and the single share of Melbert B. Cary, favored the transfer or subsequently ratified the acts of the board of directors in making a sale of the property to the American Company. I am quite well satisfied that the transfer is capable of ratification, provided the acts of the corporation in making the sale were intra vires, and provided the acts of the directors were free from actual fraud. Smith v. Ferries & C. H. R. Co. (Cal.) 51 Pac. 710; Leavenworth v. Chicago, etc., Ry. Co., 134 U. S. 688, 10 Sup. Ct. 708, 33 L. Ed. 1064; Cook on Corporations, § 707; Nye v. Storer (Mass.)

46 N. E. 402; Ervin v. Oregon Ry. & Navigation Co. (C. C.) 27 Fed. 625. The trend of the decisions is to the effect that where the charter and by-laws of a corporation, and the statute under which it was created, vest in the stockholders a right of sale of the corporate properties and discontinuance of corporate existence, such power may be exercised by them pursuant to the laws of the state to which the corporation owes life. Republican Mountain Silver Mines v. Brown, 7 C. C. A. 412, 58 Fed. 644, 24 L. R. A. 746; Cook on Corporations, § 669. The general rule under the common law undoubtedly prohibited a prosperous corporation from dissolving unless all the stockholders assented. A dissenting stockholder was enabled to prevent such a sale. Abbott v. Am. Hard Rubber Co., 33 Barb. 578. Where, however, the statute of the state under which the corporation was organized prescribes the manner in which a corporation may be dissolved, a minority stockholder must abide by the statutory provision and the corporate by-laws. Theoretically, the law appears to be founded upon the contract between the corporation and its stockholders. A shareholder presumptively knows the power and authority conferred upon directors and majority stockholders. When such majority undertake to exercise their legal powers, a minority stockholder cannot be heard to complain, in the absence of fraud or attempts to exceed their legal authority. St. Louis v. St. Louis Gaslight Co., 70 Mo. 69; Watkins v. Lawrence Nat. Bk., 51 Kan. 254, 32 Pac. 914; Hunt v. American Grocery Co. (C. C.) 81 Fed. 532. Judge Wallace decided in Ervin v. Oregon Ry. Co., supra, that minority stockholders have an equitable lien, to the extent of their interest, upon the property of the corporation, which had been sold by the majority to themselves. This suit was based upon the fraud of a combination of stockholders. In speaking of the rights of minority stockholders, the court used the following language, which with propriety may be quoted:

"It cannot be denied that minority stockholders are bound hand and foot to the majority in all matters of legitimate administration of the corporate affairs, and the courts are powerless to redress many forms of oppression practiced upon the minority, under the guise of legal sanction, which fall short of actual fraud. This is a consequence of the implied contract of association, by which it is agreed, in advance, that a majority shall bind the whole body as to all transactions within the scope of the corporate powers. But it is also the essence of the contract that the corporate powers shall only be exercised to accomplish the objects for which they were called into existence, and that the majority shall not control those powers to pervert or destroy the original purposes of the corporators."

In McMullen v. Ritchie (C. C.) 64 Fed. 253, the following language is employed to define the powers of directors of the corporation with respect to its policy and management:

"Questions of policy of management, of expediency of contracts or action, of adequacy of consideration not grossly disproportionate, of lawful appropriation of corporate funds to advance corporate interests, are left solely to the honest decision of the directors. Their powers are without limitation and free from restraint. To hold otherwise would be to substitute the judgment and discretion of others in the place of those determined on by the scheme of incorporation."

See, also, Cook on Corporations, § 683.

There can be little doubt that the majority stockholders acted within

their authority in ratifying the resolution directing the president and secretary to make sale of the good will and property, provided their acts were clear of fraud, and provided they intended, in good faith, to wind up the affairs of the corporation. The averments of the bill, however, charge the commission of unlawful acts by the directors, in conjunction with the American Company, with the view of injuring the Buffalo Company. The gist of the bill is a conspiracy to injure the corporation of which complainant and her associates are minority stockholders. It is set forth in the bill that the corporation has sustained irreparable injury and loss because of such conspiracy existing between the directors of the Buffalo Company and the American Company; that the conspiracy was conceived with the intent to absorb the property of the Buffalo Company, and to pay therefor a sum grossly less than the actual value; and, further, that the object of the conspiracy was and is to promote an illegal confederacy to restrain trade and commerce and to create a monopoly. The bill further sets forth that the intent and purpose of the conspiracy was and is to increase and control the price of school furniture in the several states and territories. The bill charges that the consideration of the transfer was secret, that a portion was retained by the directors as a secret profit, and that a price far less than the actual value of the assets of the Buffalo Company was accepted. A portion only of the consideration was paid in cash; the balance being stock in the American Company, which is alleged to be entirely valueless. The entire capital stock of the Buffalo Company, which was organized for the manufacture and sale of school furniture, is divided into 3,500 shares, of the par value of $100 each. At paragraph 8 the bill substantially alleges that the American Company was capitalized for $10,000,000, all of which was issued for property to the owners of and dealers in school furniture who joined the unlawful combination in restraint of trade, and that such stock was approximately only of the value of $3,000,000. One million dollars were borrowed to pay the secret profit to the promoters of the illegal combination. Assuming the American Company to have been organized for the express purpose of controlling the sale, price, and manufacture of school furniture in the United States, and that the directors of the Buffalo Company aided in the general undertaking to incorporate such company, and to acquire by purchase the good will and assets generally of other concerns engaged in a similar industry, would the sale by the president and secretary of the Buffalo Company pursuant to vote of ratification by a majority of the stockholders be valid? I am unable to find express authority for holding such a sale to be invalid. Cases which appear to be in analogy have, however, been considered. In the case of Arents v. The Blackwell's Durham Tobacco Company (C. C.) 101 Fed. 338, a bill was filed, praying for dissolution of the corporation, and for authority to transfer the property of the Blackwell's Durham Tobacco Company to the American Tobacco Company. The petitioning stockholders, two in number, owned and held, in all, 159,769 shares. An objecting stockholder held 1 share, other shares being held by persons not brought into the proceeding. The objecting stockholder, in opposing the sale, contended that the American Tobacco Company was an illegal com-

bination, and that those interested in it, including the petitioners, were engaged in an illegal conspiracy to restrain trade. The court seems not to have decided the case under the objections stated. Inferentially, the court did not regard as a controlling force the objection to the sale of the property because of the alleged illegal conspiracy to restrain trade and commerce. The case of Trenton Potteries Co. v. Oliphant (N. J. Err. & App.) 43 Atl. 723, 46 L. R. A. 255, 78 Am. St. Rep. 612, is more nearly in point. The complainant corporation made an agreement with competing companies by which it purchased the plant and business of the vendors, who agreed, as part consideration not to re-engage in the industry of manufacturing and selling pottery ware for a specified period of time. Prior to making the contract of sale, complainant agreed in writing with others engaged in the same business to control prices. One of the concerns joining in the agreement, for the purpose of obtaining control of the entire combination, bought five other concerns, also parties to the agreement or combination. It was generally urged on the hearing that, as such purchases were in restraint of trade, any one of the five vendors could repudiate the contract. The court, however, viewed the matter quite differently, as would seem from the language employed, and herein quoted:

"Although the control of the voting majority of the association may have been one of the appellant's motives for making its simultaneous purchases, it is inconceivable that any one of the five vendors could have repudiated his contract to sell to appellant upon the ground that such sale, if consummated, would enable appellant to obtain such control. The public interest would be amply protected by invalidating the agreement of the association for the control of prices, and the disconnected agreement of sale would be enforced as other contracts."

The sales and contracts which were alleged to be in restraint of trade in the Trenton Potteries Case, and which were subsequently acquired by the complainant, were regarded by the court as unobjectionable. In reviewing the authorities upon this question, the court announced this principle, which appears to apply to the point under consideration:

"While contracts to restrain or limit competition in the production of that ware may be repugnant to the public interests, such a restraint or limit may result from contracts which the courts are bound to enforce."

This view of the law does not stand entirely unsupported. High legal authority apparently justifies the language quoted and its application. In Diamond Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464, Judge Andrews, speaking for the Court of Appeals, in a very exhaustive opinion, says:

"We are not aware of any rule of law which makes the motive of the covenantee the test of the validity of such a contract. On the contrary, we suppose a party may legally purchase the trade and business of another for the very purpose of preventing competition, and the validity of the contract, if supported by a consideration, will depend upon its reasonableness as between the parties."

Added force to these suggestions is found in the more recent case, decided in the United States Supreme Court. Connolly v. Union Sewer Pipe Co., 184 U. S. 547, 22 Sup. Ct. 431, 46 L. Ed. 679. Here

recovery was sought on two promissory notes given on account of sewer pipe purchased by the defendant from plaintiff. The special defenses relied on by the defendant were that the plaintiff was a trust or combination of capital and skill, expressly organized for the illegal purpose of carrying out restrictions in the trade of buying and selling sewer pipes. A combination in restraint of trade, forbidden by the common law and the statutory law of the United States and the statutes of Ohio and Illinois, was asserted. The court, by Mr. Justice Harlan, said:

"The defense cannot be maintained. Assuming, as defendants contend, that the alleged combination was illegal if tested by the principles of the common law, still it would not follow that they could, at common law, refuse to pay for pipe bought by them under special contracts with the plaintiff. The illegality of such combination did not prevent the plaintiff corporation from selling pipe that it obtained from its constituent companies, or either of them. It could pass a title by a sale to any one desiring to buy, and the buyer could not justify a refusal to pay for what he bought and received by proving that the seller had previously, in the prosecution of its business, entered into an illegal combination with others in reference generally to the sale of Akron pipe."

The contract between the complainant and defendant was held to be collateral to the alleged agreement between complainant and other corporations, whereby an alleged combination was formed for the sale of the industry in which they were respectively engaged. Accordingly, it is earnestly contended in behalf of defendants that the conspiracy charged is not against the Buffalo Company, but against the public, and therefore no damages resulted to the corporation of which complainant is a stockholder. Great stress is laid upon the point that the transfer of the good will and plant of the Buffalo Company is entirely separate and independent of any intention by the directors of the American Company to create a monopoly in restraint of trade. Careful consideration of the questions here involved constrains me, though with hesitation, to accept this view of the transaction charged in the bill. The president and secretary, both of whom are defendants and directors, acting on the authority of a majority of the stockholders, had power to transfer the assets of the Buffalo Company. By the bill it appears that a resolution was passed by the Buffalo Company, at what purported to be a general meeting of the stockholders, held at Buffalo, N. Y., on January 30, 1899, authorizing the president and secretary to execute and deliver deeds and other papers which might be necessary to transfer the property to the American Company. This meeting was attended only by the owners of 1,750 shares of stock—less than a majority. Subsequently the action then taken was ratified and reaffirmed by an undoubted majority of the stockholders of the Buffalo Company on January 17, 1900, as appears by the pleas. The action of the Buffalo Company was, under the circumstances, a question of policy of management, with which courts are reluctant to interfere. Such, I think, is the tendency of the cases. The rule established by the Supreme Court in the Connolly Case by analogy is applicable to the case at bar. The act of sale and transfer was a lawful act of the corporation. The American Company was not engaged in dealing with an agent whose

powers were limited, and therefore bound to take notice of the power delegated by the principal. It was dealing with the actual principal. The American Company, assuming it to have been organized in restraint of trade, may nevertheless enforce contracts of sale of mere merchandise, and may be held on its contract of purchase. The contract to purchase the plant of the Buffalo Company, in view of the determination of that company to dissolve and discontinue business, was an enforceable contract. The American Company could not refuse to pay for the property bought, because of an asserted illegal combination; nor could the Buffalo Company refuse to convey after agreeing to do so. Such being the status of the vendor and vendee, complainant must be relegated to another remedy than that which she pursues for a vindication of any wrongs or damages sustained by her at the hands of the directors. As already stated, no fraud in the management of the corporation or in the action of the majority stockholders is asserted in the bill, except inferentially, from the general charge of conspiracy to stifle competition in trade. The complainant could not prevent or control the lawful management of the affairs of the corporation, nor the discretion exercised in the sale of the property, unless it appears that such acts were ultra vires or in fraud of complainant's rights. The pleadings do not disclose such facts. Nor can the complainant equitably rescind the sale because of any secret profit realized by the directors, or owing to their acceptance of an inadequate consideration. It may have been a bad bargain to receive in return for the property transferred $137,461 in cash, $15,000 in notes, and 1,300 shares of the common stock and 1,300 shares of the preferred stock of the American Company; but, in the absence of fraud, and without here considering the right of the Buffalo Company to accept stock in payment or part payment of the purchase price, it must be regarded as a bargain of the corporation. The benefits of a more advantageous sale would, of course, have inured to the corporation. It must take its bitter with the sweet. If the directors have converted the proceeds of the sale to their own use, or secretly received a benefit which was of the consideration passing between the vendor and vendee, the remedy, I think, is by an accounting between the directors and the corporation. The bill, however, is not framed on the theory of the liability of the directors to account to the corporation for such secret profits or other benefits which were of the consideration. The averment charging the receipt of secret profits appears to be merely an act of the directors in furtherance of the unlawful conspiracy, and not the basis for an accounting between the directors and the corporation. The allegation is not sufficiently definite to sustain the bill on that ground.

In referring next to the actual transfer and its effect, it must not be overlooked that this was an executed contract. The pleas in bar allege that all prior transactions leading to a sale of the property and a dissolution of the corporation were ratified by a positive majority of the stockholders on March 2, 1899. Having in mind the legal distinction between the right which the corporation possesses to rescind a contract on account of fraud and by reason of acts claimed to be ultra vires, how can it be insisted that the solemn con-

tract made between the Buffalo Company and the American Company should be set aside, after it had become executed, in obedience to the behest of the complainant? Her right, as heretofore stated, is not enlarged beyond that of the corporation. Her status is accordingly narrow and circumscribed. Title to property and its possession having passed to the grantee, the corporation is estopped from seeking a rescission of its contract. A stockholder standing in the shoes of the corporation likewise is estopped from asserting the invalidity of such an act. A court of equity would undoubtedly, at the suit of a stockholder, enjoin a threatened act by the corporation beyond its granted powers. Harding v. American Glucose Co., 182 Ill. 551, 55 N. E. 577. But it is strenuously urged by complainant that the ultra vires acts invalidated the contract of sale. I think the weight of authority is against an interpretation of the doctrine of ultra vires as claimed by complainant. Holmes v. Holmes, 127 N. Y. 252, 27 N. E. 831, 24 Am. St. Rep. 448; Miners' Ditch Co. v. Zellerbach, 37 Cal. 543, 99 Am. Dec. 30. In the former case the court said:

"But assuming the transaction to have been ultra vires, the defense as interposed would still be unavailable. The plaintiff has the stock, and has paid for it. It cannot be recovered back by the defendant, for the transaction is completed and closed. Whilst the contract remained executory, if it was unauthorized, a stockholder or person interested might have interfered by injunction, and prevented the transfer of the property of the plaintiff to the defendant; but, the contract having become executed, the title to the stock now vests in the plaintiff, and it has the power to sell or dispose of the same."

Cincinnati R. Co. v. McKean, 12 C. C. A. 14, 64 Fed. 36; Parish v. Wheeler, 22 N. Y. 494; Citizens' Bank v. Hawkins, 18 C. C. A. 78, 71 Fed. 371; Louisville Trust Co. v. Louisville, etc., R. Co., 22 C. C. A. 378, 75 Fed. 467; Board of Commissioners v. Cornell Univ., 6 C. C. A. 296, 57 Fed. 153; St. Louis, etc., R. Co. v. Terra Haute, etc., R. Co., 145 U. S. 393, 12 Sup. Ct. 953, 36 L. Ed. 748. The doctrine is concisely stated in Thompson on Corporations, § 6023, as follows:

"It is a principle of universal application that whenever an illegal, immoral, or prohibited contract has been duly executed on both sides, the law will not lend its aid to either of the parties for the purpose of unraveling it and enabling him to recover what he may have lost through it. In such cases the governing maxim is, 'In pari delicto potior est conditio defendentis.' When, therefore, a contract with a corporation, the making of which is beyond its granted powers, has been duly executed by both parties, neither of them can assert its invalidity as a ground of relief against it."

Complainant asks that all the property sold by the Buffalo Company to the American Company be decreed to be reconveyed and restored to the grantor; that the directors and American Company be decreed to pay all damages sustained; and for further relief. Assuming an ultra vires act to have been committed by the directors, acting for the Buffalo Company, which consisted of a contract of sale which culminated in an actual grant of property, with nothing remaining to be done to actually carry out the original intent of the parties, a court of equity, in the absence of actual fraud, would scarcely be justified in granting the extraordinary relief sought. The

contention of complainant that she will be deprived of her stock in the Buffalo Company, and compelled to take assessable stock of the American Company, or, if she refuses, the proceeds of the assessable stock upon a sale thereof, is replete with difficulty. Abundant authority exists for holding that, conceding the authority of a corporation to sell its property to another corporation, the stock in payment of such property cannot be forced upon dissenting stockholders. Cook on Corporations, § 667. It is even doubtful whether a corporation may purchase or deal in stocks of other corporations, unless expressly authorized by the statute under which it was organized. Holmes v. Holmes, supra. It may take title to all kinds of property —even the stock of another company—in payment of debt. Tallmage v. Pell, 7 N. Y. 328. In the absence of a provision authorizing the acceptance of such stock of other corporations, it may be doubted whether a dissenting stockholder may be required to take the shares of stock of another company in payment of her voluntary holdings in the original corporation. The statute under which the Buffalo Company was incorporated prohibits the purchase of stocks, bonds, and securities by a corporation, unless specially authorized. Section 3, c. 52, Code W. Va. 1899. By section 4 it is provided:

"Any corporation may take real estate, stock, bonds and securities in payment, in whole or in part, of any debt, bona fide, owing to it or as a security therefor, or may purchase the same if deemed necessary to secure or obtain payment of any such debt in whole or in part, and may manage, use and dispose of what has been so taken or purchased as a person might do."

This would appear to apply to corporations actually engaged in carrying out the purposes of their creation. The Buffalo Company, as we have seen, by affirmative act of the majority stockholders, is practically terminated, and its property sold. It has been held that the prime inquiry, when a corporation has sold its property and taken securities in stock in another corporation, in the absence of express statutory permission to accept such stock, is whether the sale was in good faith, and whether it is the purpose of the corporation to distribute the proceeds among its shareholders. It is asserted that the implied power to wind up the affairs of a corporation and dispose of its property authorizes a sale for stock in another corporation. Abundant authority is found to fortify this claim. In McCutcheon v. Merz Capsule Co., 19 C. C. A. 108, 71 Fed. 787, 31 L. R. A. 415, the Circuit Court of Appeals for the Sixth Circuit says:

"By the agreement of November 29, 1893, which we are asked to sanction and specifically enforce, the Merz Capsule Company contracted not only to sell its entire manufacturing plant, including patents, processes, and good will, to the new corporation, when organized, but that it would never again engage in the same business. If its purpose had been in good faith to wind up the affairs, and distribute the price to be paid among its stockholders, or to convert the same into money for purposes of distribution, the transaction might be supported, under the authorities heretofore cited, although payment was to be received in stock and bonds of the new company. The implied power to wind up its business and to make a sale of its property would probably authorize a sale for stock in another corporation."

Holmes v. Holmes, supra; Miners' Ditch Co. v. Zellerbach, supra; Thomas v. Railroad Co., 101 U. S. 71, 25 L. Ed. 950; and cases already cited.

I am therefore of opinion that the weight of authority supports the view that, where a corporation obtains by its charter the right to dispose of its property and to dissolve its corporate existence, it has the power to accept stock in another corporation in payment of the purchase price, provided the transaction is bona fide.

I do not deem it necessary to discuss any of the other propositions argued on the hearing. The views here expressed suffice to sustain the demurrer on the general grounds specified. In reaching the conclusion that the demurrers must be sustained for lack of equity, the pleas have been considered as credibly presenting the subsequent transactions of the Buffalo Company concerning the ratification of the prior acts of the president and secretary, and the action of the majority stockholders to terminate the corporation. I do not understand that it is claimed by complainant that this court has the power to take cognizance of the alleged illegal combination because of the provisions of the anti-trust act of 1890 (26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]). It has been many times decided, and no longer admits of any question or doubt, that the only party entitled to maintain a bill in equity for injunctive relief for violating the provisions of the anti-trust act is the United States attorney, at the instance of the Attorney General. Pidcock v. Harrington (C. C.) 64 Fed. 821; Southern Indiana Express Co. v. U. S. Co. (C. C.) 88 Fed. 659; Connolly v. Union Sewer Pipe Co., supra.

The views chiefly discussed herein are at variance with those contained in a paragraph at the close of the former opinion in this case. After holding the bill then before me multifarious, it was said that the inferences to be drawn from the averments of the bill were sufficient to enable the complainant to give proof of the charge of conspiracy and ultra vires acts. Although, as already stated, the questions here considered were then before me, the only questions which received the closest consideration, and upon which an order was made, were those bearing upon the multifariousness of the bill. The court then held the bill multifarious, and nothing more. The expressions holding contrary view were therefore inadvertent, and ought not to be regarded as an adjudication on those points.

It follows from the foregoing that the bill must be dismissed, with costs, and the pleas of the various defendants allowed. The complainant, however, is entitled to take issue, if she shall see fit, upon the facts stated in the plea, by filing replication within 30 days from the entry of an order in accordance with this opinion.